**In the Matter of Joseph BUSCAGLIA, a Grand Jury Witness.**

**In re Joseph MOSES, a Grand Jury Witness.**

**In re Lawrence PANARO, a Grand Jury Witness.**

**In re Gasper BONA, a Grand Jury Witness.**

**In re Robert OLIVER, a Grand Jury Witness.**

**In re Frank MAMBRINO, a Grand Jury Witness.**

**In re Salvatore BONITO, a Grand Jury Witness.**

**In re Salvatore CACI, a Grand Jury Witness.**

**Nos. 1012, 1045, 1013, 1014, 1016, 1015, 1037 and 1046, Dockets 75–1079, 75–1080, 75–1105, 75–1106, 75–1111, 75–1120, 75–1129 and 75–1162.**

United States Court of Appeals, Second Circuit.

Argued April 7, 1975.

Decided May 1, 1975.

Philip B. Abramowitz, Buffalo, N. Y. (Martoche, Collesano, Abramowitz & Geller, Nathan D. Seeberg, Robert M. Murphy, Thielman & Lalime, James L. Lalime, and Stephen R. Lamantia, Buffalo, N. Y., of counsel), for appellants.

James W. Gresens, Dept. of Justice Atty., Buffalo, N. Y. (Richard J. Arcara, U. S. Atty., W. D. N. Y., Buffalo, N. Y., of counsel), for appellee.

Before HAYS, GURFEIN and VAN GRAAFEILAND, Circuit Judges.

GURFEIN, Circuit Judge:

These consolidated appeals are from a series of orders issued by the Honorable John T. Curtin, United States District Judge for the Western District of New York, remanding the eight witness appellants to the custody of the United States Marshal for refusing, while under a grant of immunity, to answer questions before a Federal Grand Jury. See 28 U.S.C. § 1826(a).

During February 1975 the appellants were subpoenaed, along with some thirty other persons, to appear as witnesses before the Grand Jury in Buffalo. Each refused to testify and the government applied to the District Court for grants of immunity. The government stated in its application in each appellant's case that the Grand Jury was investigating violations of Section 1955 (illegal gambling business), Sections 892–94 (extortionate credit transactions), and Section 1962 (racketeering) of Title 18 of the United States Code allegedly taking place at two social clubs to which appellants belong. After immunity had been granted by Judge Curtin pursuant to 18 U.S.C. §§ 6002 and 6003, each of the witnesses refused to answer certain questions put to him before the Grand Jury by a Department of Justice attorney. In so doing appellants invoked their rights under the First Amendment of the Constitution, contending that to compel them to answer would violate their rights of freedom of speech and of associational privacy. They also claimed violation of their Ninth Amendment rights.

In addition, appellants invoked the Fourth Amendment. They contended that the questions they were asked were the result of unlawful electronic surveillance, refusing to answer questions under 18 U.S.C. § 2515 and filing affidavits to compel the government to affirm or deny the surveillance under 18 U.S.C. § 3504. The only ground alleged in an affidavit by an attorney for an appellant for the suspicion that electronic surveillance had been conducted at the social clubs to which appellants belonged, was the refusal of the attorney for the Strike Force either to affirm or deny that such eavesdropping at the clubs existed. The attorney for the witness conceded, however, that the Strike Force attorney "did state that he believes that Mr. Buscaglia was not overheard by any electronic device."

Whether an affidavit merely reciting that the prosecutor had refused to affirm or deny to counsel for the witness that there had been electronic surveillance is sufficient to require the government to answer by affidavits need not be decided. Cf. United States v. Toscanino, 500 F.2d 267, 281 (2 Cir. 1974). And cf. United States v. Alter, 482 F.2d 1016, 1026–27 (9 Cir. 1973), where the court spelled out the prima facie elements of the affidavits required to trigger the government's duty of disclosure. While it is true that a witness may not be committed pursuant to 28 U.S.C. § 1826(a) when the questions he refused to answer before the grand jury are derived from unlawful electronic surveillance, Gelbard v. United States, 408 U.S. 41, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972), we are satisfied that the subsequent information tendered by the prosecutor under oath to this court is sufficient to

establish that there were in fact no electronic surveillance records to be suppressed.

The government's original response to the allegations of electronic surveillance was a denial by affidavit that appellants' residential telephones had been tapped. No affidavit was supplied, however, to deny that the two social clubs involved in the grand jury's investigation had been the subject of electronic surveillance. The prosecutor, in an *in camera* conference with Judge Curtin, did state, but not under oath, that governmental files had been searched and that "there is no and there have been no wiretaps." This *in camera* proceeding was transcribed and sealed. Thereafter, on March 14, 1975, the court permitted the unsealing of the *in camera* proceeding and it was made available to appellants. We do not understand why the government at that point did not make an affidavit under oath to conform to the statements that had been made to Judge Curtin. This question, however, as well as the question of whether there was sufficient allegation by appellants even to require a response from the government, is obviated by circumstances which developed after this appeal had been filed.

■ We have, since the argument, received from appellee an affidavit by a special agent of the F.B.I. stating that with regard to the premises known as the "Gettysburg Social Club" located at 374 Connecticut Street, Buffalo, "no wiretaps, electronic recording or transmitting devices of any kind were used or attempted during the aforesaid investigation." With regard to the premises known as "Nary's Social Club" located at 314 West Ferry Street, Buffalo, the same statement is made. The affidavit further states that attempts to overhear conversations at Nary's Social Club through a device concealed on the person of an informant were entirely unsuccessful and nothing was overheard. The affidavit also affirms that the electronic surveillance records maintained by the Federal Bureau of Investigation were checked and that these reflect that no conversations involving any of the appellants were overheard between May of 1974 and March of 1975.

We have also been favored with an affidavit by the special attorney employed by the Department of Justice and assigned to the Organized Crime Strike Force in Buffalo, who swears that he personally prepared the questions which were asked of each appellant-witness before the grand jury and that these questions were prepared exclusively from reports derived from first-hand observations of an F.B.I. undercover agent and an F.B.I. informant. He further swears that to the best of his knowledge and belief no such question was formulated from information which was directly or indirectly derived from the use of electronic surveillance. We think this is sufficient. See Judge Lumbard's penetrating analysis in his concurring opinion in United States v. Grusse, 515 F.2d 157 (2 Cir. 1975).

We agree with our brethren of the Seventh Circuit that where it is made clear to the appellate court by affidavit that there has been no illegal electronic surveillance, such affidavits will be deemed sufficient to satisfy the requirements of Sections 1826(a) and 3504. Korman v. United States, 486 F.2d 926, 931, 934 (7 Cir. 1973). It would in the circumstances be futile to remand for the receipt by Judge Curtin of the affidavits filed with us and, accordingly, we will affirm.

■ We find frivolous the claims that the First or Ninth Amendment rights of these defendants, who have been given immunity, have been violated. The cases involving newspaper reporters' claims of privilege such as Branzburg v. Hays, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972), are not at all in point. Freedom of association cases like N.A.A.C.P. v. Alabama, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958), are at least as far afield. The First Amendment does not make a social club a sanctuary for crime. A social club is an aggregation of citizens who must individually respond to

lawful interrogation by a grand jury unless protected by individual privilege.

In short, the immunity was properly conferred. The appellants had no privilege to refuse to answer and there was in fact no electronic surveillance either of their residences or of their social clubs. The orders are affirmed.