**UNITED STATES of America, Plaintiff,**

v.

**Thurston Paul BELL, Defendant.**

**No. CIV.A. 1:CV–01–2159.**

United States District Court,
M.D. Pennsylvania.

July 15, 2003.

Anne K. Fiorenza, Office of the United States Trustee, Martin C. Carlson, U.S. Attorney's Office, Harrisburg, PA, Donald N. Dowie, Evan J. Davis, Michael S. Raum, U.S. Department of Justice, Washington, DC, for Plaintiff.

Anthony N. Thomas, Jeffrey J. Wood, Thomas & Associates, Harrisburg, PA, for Defendant.

### MEMORANDUM

CONNER, District Judge.

## I. INTRODUCTION

Presently before the court is the United States' motion to compel (1) responses to interrogatories, (2) responses to requests for admissions, and (3) the production of documents. (Doc. 45). Defendant, Thurston Paul Bell ("Bell"), has interposed numerous objections to the United States' discovery requests. Specifically, Bell raises objections based upon the Fifth Amendment "act of production" privilege, the Fourth Amendment right to privacy, the First Amendment freedom of association, the work product privilege, trade secrets protection and the statutory protection set forth in 5 U.S.C. § 552(a).

Bell's objections are memorialized in a fifty-five (55) page answer to plaintiff's first set of interrogatories, requests for production of documents and requests for admissions (Doc. 46, Exhibit "B") and in a seventy-five (75) page "Statement of Priviledges (Sic) and Ob-

jections Regarding Documents Presented for In-camera Review." (Doc. 117). With one exception [1], these statements object to each of the United States' discovery requests under the rubric of privilege as previously described. In light of the issues raised by Bell's objections, the court issued an order directing Bell to produce all contested documents to the court for *in camera* review. (Doc. 69). The order also required Bell to provide the court "with an index of the documents and a brief statement regarding each document and why he believes he need not produce it to the Plaintiff." *Id. See, e.g., U.S. v. Grable*, 98 F.3d 251, 257 (6th Cir.1996) (district court should individually review *in-camera* any documents to which a summoned party raises Fifth Amendment objections).

## II. FACTUAL BACKGROUND

The facts of this case are set forth in the court's memorandum dated January 10, 2003. (Doc. 90). *See U.S. v. Bell*, 238 F.Supp.2d 696 (M.D.Pa.2003). However, certain facts deserve emphasis and reiteration.

Defendant Bell is a tax protestor. He owns and operates the "National Institute for Taxation Education" ("NITE"). Through NITE, Bell advertises and sells the fallacious "U.S. Sources" or "Section 861" argument. Essentially, Bell sells the false tax advice that American citizens are not required to pay federal income tax on domestically earned income. In the context of Bell's Fifth Amendment objections, it must be emphasized that Bell admits to providing tax advice through NITE (N.T. 47) "on the edge of what would be seen as legal . . . ." (N.T. 28). Bell openly espouses and promotes an abusive tax scheme built on concepts repeatedly rejected by the federal courts. *See Bell*, 238 F.Supp.2d at 700–01.

Bell's marketing ploys are aggressive and audacious (and patently false), such as the following claim found on the NITE website:

> Unlike others who peddle arguments that may sound similar on the surface, our strategies have proven success, as the In-

---

**1.** Bell provided an answer to plaintiff's first interrogatory which requested that defendant "explain in detail the 'U.S. sources argument' referred to on your websites, www.nite.org and www.tax-gate.com and in correspondence and in other documents prepared by you." (Doc. 46, Exhibit "A").

ternal Revenue Service (IRS) itself (as well as U.S. Attorneys and Federal Judges) has accepted NITE's arguments as valid, and has provided full refunds to NITE Members who use our strategies.

*(See* Doc. 46, Exhibit "A", p. 20.)

Bell receives remuneration from individual clients and members of NITE for his tax advice through direct hourly billing ($125 per hour, Doc. 36, Exhibit "C", p. 109) and through NITE member fees. (*See* Doc. 36, Exhibit "C"). Bell assists his clients in the preparation of zero income tax returns with an "asseveration of claimed income" attached, disputing the amount of gross income reflected on the taxpayer's W–2 forms. (Doc. 36, Exhibit "K", p. 53). *See also* N.T. 58–60. Many of the documents in dispute are communications from Bell's clients requesting assistance in the preparation of various income tax forms or responses to notices and correspondence generated by the Internal Revenue Service.

Bell's discovery objections must be analyzed in the context of these well-known facts about Bell's abusive tax scheme and his aggressive promotion of it.

One additional fact is pertinent to the court's analysis of Bell's discovery objections. The court finds that Bell is an "income tax return preparer" as defined in Treas. Reg. § 301.7701–15(a)(1). 26 C.F.R. § 301.7701–15(a)(1). The record clearly reflects that Bell has furnished advice to taxpayers in such a fashion that the completion of the return or claim for a refund is largely a clerical matter. (*See* Doc. 36, Exhibit C *passim*). Accordingly, Bell is required to:

(1) retain a completed copy of such return or claim, or retain, on a list, the name and taxpayer identification number of the taxpayer for whom such return or claim was prepared, and

(2) make such copy or list available for inspection upon request by the Secretary.

26 U.S.C. § 6107(b).

### III. BELL'S OBJECTIONS TO THE UNITED STATES' REQUEST FOR PRODUCTION OF DOCUMENTS

Plaintiff seeks 18 separate categories of materials in its Rule 34 request for production of documents. As previously stated, Bell has interposed objections to all 18 categories of materials on the basis of Fifth Amendment privilege. He has also interposed objections to 13 of the 18 categories on the basis of "individual and associational First Amendment protections." Bell has also objected to the production of certain categories of documents based upon a Fourth Amendment right to privacy, the work product privilege, trade secret protections and the statutory protections of 5 U.S.C. § 552a.

The court's *in camera* review has been complicated by several factors. First, the contested materials are voluminous; defendant has presented the court with 16 banker's boxes full of documents, videotapes and computer disks. These boxes contain over 25,000 pages of documents, and ostensibly include every document or electronic or videographic recording acquired by Bell in connection with his operation of the National Institute for Taxation Education ("NITE") website or in furtherance of his tax counseling services to "members" of NITE.

Second, the documents are loosely organized; Bell has provided an index with only the most basic description of the documents produced. The court has been required to review and to evaluate each item, folder by folder, page by page and bit by bit, to divine the logic of defendant's groupings; in the case of certain documents, there is no logic to defendant's groupings.

Third, Bell has not complied with the court's directive to provide a brief statement of privilege regarding each document. Instead, Bell has lumped together hundreds and, in some cases, thousands of pages of documents (or electronic material) and provided only generalized reasons for non-disclosure. In essence, Bell's objections lay the entire universe of Bell's potentially discoverable materials at the court's doorstep for resolution. That such action shirks responsibilities set forth in the Rules of Civil Procedure is quite obvious. Nevertheless, in light

of Bell's *pro se* status [2], the court will proceed to the merits of Bell's objections.

### A. *Fifth Amendment—Act of Production Doctrine*

The Fifth Amendment provides that "[n]o person shall ... be compelled in any criminal case to be a witness against himself ...." U.S. Const. amend. V. "[T]he Fifth Amendment privilege applies not only at criminal trials, but 'in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate [the defendant] in future criminal proceedings.' " *U.S. v. Lee,* 315 F.3d 206, 211 (3d Cir.2003) (quoting *Minnesota v. Murphy,* 465 U.S. 420, 426, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984)).

The Fifth Amendment protects only "compelled" testimony. It does not protect the content of voluntarily created documents. *U.S. v. Hubbell,* 530 U.S. 27, 36, 120 S.Ct. 2037, 147 L.Ed.2d 24 (2000); *U.S. v. Doe,* 465 U.S. 605, 610, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984) ("*Doe I*"); *Fisher v. U.S.,* 425 U.S. 391, 409, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976). In the instant case, Bell, his clients, and his associates voluntarily created each of the requested documents. Therefore, the Fifth Amendment does not protect their content. Nevertheless, the Fifth Amendment does, at times, protect against the compelled act of producing voluntarily created documents to the government. *Hubbell,* 530 U.S. at 36, 120 S.Ct. 2037; *Doe I,* 465 U.S. at 613–14, 104 S.Ct. 1237. *See also Fisher,* 425 U.S. at 410, 96 S.Ct. 1569 ("The act of producing evidence in response to a subpoena nevertheless has communicative aspects of its own, wholly aside from the contents of the papers produced.").

An order requiring Bell to produce documents in his possession "without doubt involves substantial compulsion." *Fisher,* 425 U.S. at 409, 96 S.Ct. 1569. However,

such compulsion only falls within the ambit of the Fifth Amendment if it meets two conditions: the evidence must be both (1) testimonial and (2) incriminating.[3] "The word 'witness' in the constitutional text limits the relevant category of compelled incriminating communications to those that are 'testimonial' in character." *Hubbell,* 530 U.S. at 34, 120 S.Ct. 2037. "Thus, even though the act may provide incriminating evidence, a criminal suspect may be compelled to put on a shirt, to provide a blood sample, or handwriting exemplar, or to make a recording of his voice." *Id.* at 35, 120 S.Ct. 2037 (footnotes omitted).

The Supreme Court has provided the following guidance in determining when communication is testimonial: the "communication must itself, explicitly or implicitly, relate a factual assertion or disclose information." *Doe v. U.S.,* 487 U.S. 201, 210, 108 S.Ct. 2341, 101 L.Ed.2d 184 (1988) ("*Doe II*") (citing *Fisher,* 425 U.S. at 391, 96 S.Ct. 1569 & *Doe I,* 465 U.S. at 605, 104 S.Ct. 1237). For instance, the act of production may "tacitly concede[ ] the existence of the papers demanded and their possession or control by the taxpayer." *Fisher,* 425 U.S. at 410, 96 S.Ct. 1569. It may also signify Bell's belief that the documents produced are those described in the United States' discovery request. *Id.* (citing *Curcio v. U.S.,* 354 U.S. 118, 125, 77 S.Ct. 1145, 1 L.Ed.2d 1225 (1957)). However, the question of whether an act is testimonial "does not lend [itself] to categorical answers, [its] resolution may instead depend on the facts and circumstances of particular cases or classes thereof." *Fisher,* 425 U.S. at 410, 96 S.Ct. 1569.

In *Fisher,* the Court held that the accused's production of his accountant's notes and tax records regarding the accused's taxes was not testimonial. In making this determination, the Court noted that:

real and appreciable danger of prosecution. The Government alleges that Bell is engaged in promoting a fraudulent tax scheme for profit. Given the frivolous nature of Bell's U.S. Sources argument, the court must conclude that the potential for prosecution is more real than remote.

---

**2.** The court notes with interest that Bell's objections include citations prepared in Bluebook format. These documents strongly suggest the assistance of a legally trained person who is ghostwriting Mr. Bell's legal arguments.

**3.** Despite the United States' argument to the contrary, Bell has met his burden of demonstrating a

[t]he papers belong to the accountant, were prepared by him, and are the kind usually prepared by an accountant working on the tax return of his client. *Surely, the Government is in no way relying on the 'truth-telling' of the taxpayer to prove the existence of or his access to the documents.* The existence and location of the papers are a forgone conclusion and the taxpayer adds little or nothing to the sum total of the Government's information by conceding that he in fact has the papers.

*Fisher,* 425 U.S. at 411, 96 S.Ct. 1569 (emphasis added). Thus, if the existence, possession and authenticity of the documents are a "foregone conclusion" and the defendant "adds little or nothing" by producing the documents, the defendant's Fifth Amendment privilege is not violated. *Id.*

■ In *Hubbell,* the Supreme Court distinguished *Fisher* and clarified the act of production doctrine. Before the Court was an indictment against defendant Hubbell concerning tax evasion and related crimes. The Independent Counsel attempted to subpoena Hubbell's business and tax records and Hubbell objected on the grounds that his act of production would be an act of self-incrimination. The Court concluded that the Fifth Amendment applied to Hubbell's act of production, opining:

[w]hatever the scope of this 'foregone conclusion' rationale, the facts of this case plainly fall outside of it. While in *Fisher* the Government already knew that the documents were in the attorneys' possession and *could independently confirm their existence and authenticity* through the accountants who created them, here the Government has not shown that it had any prior knowledge of either the existence or the whereabouts of the 13,120 pages of documents ultimately produced by respondent. The Government cannot cure this deficiency through the overbroad argument that a businessman such as respondent will always possess general business and tax records that fall within the broad categories described in this subpoena.

*Hubbell,* 530 U.S. at 44–45, 120 S.Ct. 2037 (emphasis added and citations omitted).

Thus, the *Hubbell* court held that the act of production privilege generally applies unless the government can establish knowledge, possession and authenticity through independent means.

■ There is a recognized exception to the act of production doctrine known as the required records exception. Essentially, this exception applies to members of regulated industries. If an individual chooses to enter a regulated industry, he is required to abide by its rules and cannot complain about being compelled to produce documents that all members must keep in their possession. *See Shapiro v. United States,* 335 U.S. 1, 32–35, 68 S.Ct. 1375, 92 L.Ed. 1787 (1948); *Baltimore City Dept. of Social Servs. v. Bouknight,* 493 U.S. 549, 556, 110 S.Ct. 900, 107 L.Ed.2d 992 (1990); *In re Grand Jury Proceedings (McCoy),* 601 F.2d 162, 168 (5th Cir.1979); *United States v. Lehman,* 887 F.2d 1328, 1333–34 (7th Cir.1989). For example, in *Herman v. Galvin,* 40 F.Supp.2d 27 (D.Mass.1999), the Occupational Safety and Health Administration ("OSHA") issued a subpoena to the proprietor of a construction company for the production of documentation regarding all occupational injuries and illnesses suffered by its employees. The court held that the documents sought fell within the required records exception to the Fifth Amendment testimonial privilege and required the proprietor to comply with OSHA's subpoena. *Id.* at 29. *See also In re Grand Jury Subpoena (Spano),* 21 F.3d 226 (8th Cir.1994). *Contra Smith v. Richert,* 35 F.3d 300, 304–05 (7th Cir.1994).

## B. *Bell's Act of Production Claim*

The crux of Bell's objections is that his production of the requested documents will incriminate him. He is concerned that the documents he produces could be used against him in a subsequent criminal prosecution. Consequently, the court is faced with two issues:

(1) Whether Bell's production of the documents will *exclusively* establish their existence, authenticity, as well as Bell's possession of them; and

(2) Whether any of the documents fall within the required records exception

to the Fifth Amendment privilege against self-incrimination

Addressing the latter issue first, the court concludes that the required records exception applies to documents which income tax return preparers are required to keep, to wit: copies of tax returns or lists of the names and taxpayer identification numbers of taxpayers for whom returns or claims for refunds are prepared. 26 U.S.C§ 6107(b). When he started the National Institute for Taxation Education, Bell voluntarily entered the world of income tax return preparation. The production of tax returns and a list of taxpayer clients is mandated by a lawful regulatory framework; hence, Bell must provide access to these documents under this regulatory framework.

Under the circumstances of this case, application of the required records exception is necessary and appropriate for the following reasons:

(1) There is a strong public interest in obtaining the information necessary to the regulatory scheme.

(2) If a private individual could invoke the privilege, the regulatory purpose of the scheme would be frustrated.

(3) By engaging in the regulatory activity, the individual is deemed to have waived his privilege as to the production of records which are required to be kept.

(4) The individual admits little significance because of the public aspects of the documents produced.

*See In re Grand Jury Subpoena (Spano)*, 21 F.3d at 230.

With respect to the first issue, the court finds that several categories of documents are a "foregone conclusion" under *Fisher* and can be authenticated through other means. In other words, the court finds that Bell's act of producing the following documents is insufficiently testimonial. The court's rationale is described with respect to each category of document.

1. *Bell's videotapes, audiotapes and "tax avoidance" seminar materials:*

These tapes and seminar materials are a foregone conclusion because Bell advertises them on the NITE website and describes their contents in detail. (Doc. 36, Exhibit "C," pp. 3–4, 15–23).

2. *Records of the "tax avoidance" assistance through the "Members Only" section of the NITE website:*

These materials are a foregone conclusion because Bell publicly promotes his "tax avoidance" assistance through the Members Only section of his NITE website (www.nite.org). The description of his services includes: "strategies, information, letters, news updates, articles, and other tools needed to avoid and eliminate any appearance of legitimacy of claims of taxes owed, and apparent liabilities." Specifically, Bell has announced that the "Members Only" area includes topics such as "1099 Strategy— including forms and letters," "W–4 Strategy—including forms and letters," "[t]he paperwork required to give your employer in lieu of Withholding," "[t]he forms and letters needed to reverse past determinations of 'Taxable Income,'" and several others. (Doc. 36, Exhibit "C," pp. 25–26). Hence, the existence of these documents and Bell's custody of them are not in doubt. Clearly, Bell cannot further incriminate himself through the act of producing these materials.

3. *Letters drafted by Bell on behalf of NITE Members David Bosset. Robert W. Woods, Ron Laviolette, and several letters drafted on behalf of other clients which were submitted to the California Franchise Tax Board:*

As part of his promotion of NITE and its member services, Bell states on the NITE website that he has prepared letters for these individuals. (*See e.g.* Doc. 36, Exhibit C, pp. 64—67). Accordingly, the existence of these documents and Bell's custody of them are undisputed. Clearly, Bell cannot further incriminate himself through the act of producing them.

As set forth above, the court finds that Bell's act of producing these documents is

342

insufficiently testimonial. The existence and location of these documents are a "foregone conclusion" and Bell adds little or nothing to the sum total of the government's information by conceding that he has possession of these materials. *Fisher* 425 U.S. at 411, 96 S.Ct. 1569. The only remaining question is whether these materials can be authenticated without reference to his act of production. The court is convinced that the materials can be authenticated through the taxpayer client or NITE member or through other parties to the communications such as the regulatory agencies to whom the materials were sent. To the extent any of the materials are in Bell's handwriting, they can also be authenticated by handwriting experts. *See United States v. Teeple,* 286 F.3d 1047, 1051 (8th Cir.2002). Therefore, Bell's objections to the production of the three categories of documents and materials set forth above, based upon the Fifth Amendment, are overruled.

■ The United States also seeks the production of a "chat room" text on the NITE website. However, the United States presents only limited evidence regarding Bell's operation of the chat room. The following sentence comprises the totality of the United States' evidence regarding this NITE chat room:

> We also make use of a **valuable** text chat room on Wednesdays to post questions, comments, and successes; for all public & members and available Senior Fellows to see and help with if needed. In effect, you have around the clock access to substantive information, as well as all of the other on-line members and staff, via email and this chat room.

(Doc. 36, Exhibit C, p. 26).

Because the Government lacks knowledge of specific documents, Bell's production of these documents and electronic data would testify to their existence and his possession of them. Evidence of how the United States could authenticate documents or electronic

data from this chat room without reference to Bell's production is absent from the record. *See* FED. R. EVID. 901, 902. Bell's act of producing these documents and data would "implicitly[ ] relate a factual assertion or disclose information." *Doe II,* 487 U.S. at 210, 108 S.Ct. 2341. At trial the United States would have to rely on Bell's "truth-telling" in order to authenticate the documents. *See Fisher,* 425 U.S. at 411, 96 S.Ct. 1569. Therefore, the court finds that Bell's act of producing the chat room materials has a testimonial aspect and that the Fifth Amendment protects those materials from compelled production.

The court has also examined the subject matter of the United States' remaining discovery requests to determine whether the Fifth Amendment shields Bell's act of production. Documents or electronic or videographic materials falling within the ambit of these remaining requests do not appear to be "foregone conclusions." Absent a more specific proffer by the government, the court finds that these remaining documents are also protected by the Fifth Amendment.[4]

## C. *Fourth Amendment Right of Privacy*

Bell asserts that the requested discovery violates his Fourth Amendment right to privacy. The Federal Rules of Civil Procedure provide that:

> Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reason-

4. The court recognizes that this finding paints many potentially discoverable documents with a broad Fifth Amendment brush, but the court sees no practical alternative given the circumstances and breadth of our *in camera* review as well as defendant's *pro se* status. Consequently, the court's holding is without prejudice to the government's right to request reconsideration of specific catégories of documents that are more akin to the materials actively promoted by Bell on the NITE website.

ably calculated to lead to the discovery of admissible evidence.

Fed.R.Civ.P. 26(b)(3).

■ There is no "right of privacy" privilege against discovery in civil cases. *Hecht v. Pro–Football, Inc.* 46 F.R.D. 605, 607 (D.D.C.Cir.1969); *U.S. v. Federation of Physicians and Dentists, Inc.,* 63 F.Supp.2d 475, 480 (D.Del.1999). However, the court may take concerned individuals' privacy interests into consideration in determining whether a discovery request is oppressive or unreasonable. *Id. See also* FED. R. CIV. P. 26(c). In light of the court's ruling on Bell's Fifth Amendment objections, the court does not believe that production of the unprivileged materials would be oppressive or unreasonable. Accordingly, the court finds Bell's right of privacy argument unpersuasive.

### D. *First Amendment Freedom of Association*

■ Bell also contends that the United States' discovery requests violate his First Amendment freedom of association. The constitution guarantees "a right to associate for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion." *Roberts v. U.S. Jaycees,* 468 U.S. 609, 618, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984); *Brady v. Town of Colchester* 863 F.2d 205, 217 (2d Cir.1988). However, "[t]he First Amendment does not make a social club a sanctuary for crime." *In re Buscaglia,* 518 F.2d 77, 79 (2d Cir.1975).

The requested information is clearly within the scope of permissible discovery. *See* FED. R. CIV. P. 26(b)(3). The court has already made a preliminary determination that NITE facilitates Bell's sale of false commercial speech and incitement of imminent lawless conduct. (Doc. 90, pp. 12–16). The freedom of association does not extend to such unlawful activity. Moreover, the purpose of the United States' discovery requests is not to curb Bell's clients' protected speech or freedom of association, but to establish

Bell's act of advising and facilitating an abusive tax scheme for profit. Finally, the court has determined that Bell is *statutorily required* to maintain a list of his taxpayer clients (or a copy of their returns). Under these circumstances, production of the requested discovery would not violate Bell's or his clients' freedom of association.

### E. *The Work Product Privilege*

■ Bell contends that the work product doctrine protects the requested documents from disclosure. *See* FED. R. CIV. P. 26(b)(3); *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). The court disagrees. In pertinent part, Rule 26(b)(3) provides that:

> a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

FED. R. CIV. P. 26(b)(3).

In order to claim the work product privilege, a litigant must produce a privilege log which:

> describe[s] the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.

FED. R. CIV. P. 26(b)(5). *See also* FED. R. CIV. P. 34(b). After initially failing to produce a privilege log, Bell submitted, at the court's direction,[5] a "statement of privileges and objections regarding documents presented for in camera review." (Doc. 117). This "privilege log" is woefully inadequate. Bell

---

**5.** It is unclear whether the United States received a copy of Bell's Statement of Privileges and, therefore, the court has directed the Clerk of

Court to file this statement on the record of this matter. *See* Order of July 11, 2003. (Doc. 116).

claims that *some* of the requested information constitutes work product produced by "Mr. Euchner and Defendant for Members of the Institute ... for preparation of a case for trial." (Doc. 117, pg. 7).

Upon examination of the privilege log and in camera review of Bell's files, the court finds Bell's work product doctrine argument to be without merit. The purpose of the work product privilege is to:

> promote[ ] the adversary system ... by protecting the confidentiality of papers prepared by or on behalf of attorneys in anticipation of litigation. Protecting attorneys' work product promotes the adversary system by enabling attorneys to prepare cases without fear that their work product will be used against their clients.

*Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1428 (3d Cir. 1991).

Bell is not a lawyer. Bell did not create the subject work product at the direction of a lawyer or in consultation with a lawyer. He sells his "clients" absurd tax advice, which puts these clients in jeopardy of legal sanction. The work product doctrine is an evidentiary privilege and must be strictly construed. *Id.* at 1429. The purposes of the doctrine are not served by applying the privilege to this sort of "work product."

■■■ Furthermore, the work product privilege is not absolute. *Id.* The work product doctrine does not shield from discovery work product created in furtherance of a crime or fraud. *In re Grand Jury Proceedings (Doe)*, 102 F.3d 748, 752 (4th Cir.1996). As the Supreme Court aptly stated: "[a] client who consults an attorney for advice that will serve him in the commission of a fraud will have no help from the law. He must let the truth be told." *Clark v. U.S.*, 289 U.S. 1, 15, 53 S.Ct. 465, 77 L.Ed. 993 (1933). Assuming *arguendo* that the work product doctrine would apply generally to Bell's work product, the doctrine does not privilege such impropriety as that in which Bell is engaged (*i.e.*—the sale of frivolous tax advice).

### F. Trade Secrets Protection and the Statutory Protection Set Forth in 5 U.S.C. § 552(a)

Bell's objections based upon claims of trade secret protection or statutory protection set forth in 5 U.S.C. § 552(a) are completely frivolous and the court will not engage in a detailed analysis of their inapplicability to the discovery at issue.

### G. Conclusion

For the foregoing reasons, Bell will be required to produce the three categories of documents and electronic or videographic materials described in Section III.B. of this memorandum. Bell will not be required to produce any other categories of documents and electronic or videographic materials at this time.

### IV. THE UNITED STATES INTERROGATORIES AND REQUESTS FOR ADMISSIONS

The court has carefully reviewed the United States' interrogatories and requests for admissions and finds that certain interrogatories and certain requests for admissions are not objectionable in light of its disposition of Bell's objections to the United States' request for production of documents. Specifically, the court will overrule Bell's objections to interrogatory number 9 and paragraphs 1, 2, 3 and 9 of the United States' request for admissions. These discovery requests are appropriate given the court's ruling on Bell's required production of data and documents. With the exception of these five paragraphs, the court will sustain Bell's Fifth Amendment objections to the remaining interrogatories and requests for admission for the reasons set forth above.

An appropriate order will issue.

### ORDER

AND NOW, this 15th day of July, 2003, in accordance with the accompanying memorandum, it is hereby ORDERED that plaintiff's motion to compel and for costs is granted in part and denied in part. Defendant Bell is hereby DIRECTED to comply with the United States' discovery requests as set forth in

the accompanying memorandum within fifteen (15) days of the date of this order. In all other respects, plaintiff's motion is denied. Each side will bear its own costs for litigating this motion. Defendant Bell is directed to collect the documents presented for *in camera* review. Arrangements for this collection shall be made by contacting Courtroom Deputy McKinney at (717) 221–3920.