Substantially for the reasons stated in the District Court's opinion, the judgment of the District Court is **AFFIRMED**.

**UNITED STATES of America,**
**Appellee,**

v.

**Yassin Muhiddin AREF, Mohammed Mosharref Hossain, Defendants–Appellants,**

New York Civil Liberties Union,
Proposed–Intervenor–
Appellant.

Nos. 07–0981–cr, 07–1101–cr, 07–1125–cr.

United States Court of Appeals,
Second Circuit.

July 2, 2008.

William C. Pericak, Assistant United States Attorney (Elizabeth C. Coombe and Brenda Sannes, Assistant United States Attorneys on the brief), for Glenn T. Suddaby, United States Attorney for the Northern District of New York, Albany, NY, for Appellee.

Terence L. Kindlon, Esq. (Kathy Manley, Esq. on the brief), Kindlon and Shanks, P.C., for Yassin Aref.

Kevin A. Luibrand, Esq., Albany, NY, for Mohammed Hossain.

Corey Stoughton (Arthur Eisenberg and Christopher Dunn, on the brief) for New York Civil Liberties Union, for Appellants.

Melissa Goodman, American Civil Liberties Union, and Corey Stoughton, New York Civil Liberties Union (Jameel Jaffer, American Civil Liberties Union; Arthur Eisenberg, Christopher Dunn, New York Civil Liberties Union, on the brief), for the American Civil Liberties Union and the New York Civil Liberties Union.

Peter Karanjia, Davis Wright Tremain LLP (Christopher Robinson, David Wright Tremaine LLP, on the brief; David E. McGraw, The New York Times Company, of counsel), New York, NY, for Advance Publications, Inc., The Associated Press, Daily News L.P., Gannett Co., Inc., The Hearst Corporation, NBC Universal, Inc., The New York Newspaper Publishers Association, The New York Times Company, Newsweek, LLC., North Jersey Media Group, The Reporters Committee for Freedom of the Press, Reuters America LLC, U.S. News and World Report, L.P., and The Washington Post.

PRESENT: Hon. DENNIS JACOBS, Chief Judge, Hon. JOSEPH M. McLAUGHLIN, Circuit Judge, Hon. LEONARD B. SAND, District Judge.*

* The Honorable Leonard B. Sand, of the United States District Court for the Southern District of New York, sitting by designation.

## SUMMARY ORDER

Yassin Aref and Mohammed Hossain appeal from judgments of conviction entered by the United States District Court for the Northern District of New York (McAvoy, J.) on March 19, 2007 for multiple counts arising out of a money laundering conspiracy intended to provide material support to terrorism. *See* 18 U.S.C. §§ 1956(a)(3), 1956(h); 18 U.S.C. §§ 2339A, 2339B. Aref additionally challenges his conviction for making a false statement to the FBI. *See* 18 U.S.C. § 1001.

The New York Civil Liberties Union appeals from an order denying it intervenor status, which was entered on February 22, 2007. *See United States v. Aref,* No. 04–cr–402, 2007 WL 603510 (N.D.N.Y. Feb. 22, 2007).

In an accompanying opinion, we (1) hold that a defendant's entitlement to discover information otherwise inaccessible under CIPA is limited to that information "helpful or material to the defense," and (2) reject the contention that the district court misapplied Supreme Court First Amendment doctrine. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues on appeal. This summary order considers the other appellate issues.

## I. SUFFICIENCY OF THE EVIDENCE

### A. Money Laundering Evidence

#### 1. Hossain

■ Hossain contends that the evidence was insufficient to show that the cooperating witness ("CW") "represented" to him that the money he agreed to launder was proceeds of material support to terrorists. However, the CW (1) displayed a surface-to-air missile to Hossain, (2) told Hossain that "[a]ll the missiles which come go for the Jehadis," (3) displayed a missile's trigger mechanism, and (4) indicated that the CW would receive final payment for the missile only once his customers received the trigger.

■ Hossain also challenges the sufficiency of evidence to show that he intended to conceal the source of his funds. *Cf. Cuellar v. United States,* 553 U.S. ——, 128 S.Ct. 1994, 170 L.Ed.2d 942 (2008). But evidence showed that, in response to a question regarding how Hossain would explain his cash inflows, Hossain explained (on December 3, 2003) that he would characterize them as rental income from his real estate.

#### 2. Aref

■ The evidence suffices to show that the CW represented to Aref that the money came from a missile sale: (1) the CW displayed the trigger mechanism to both Aref and Hossain and explained that he would receive payment for the missile only once his customers received the trigger; (2) Aref warned the CW to be careful, since "[i]f they find any proof, they are going to tell you, you support the terrorism"; and (3) the CW told Aref, "my business comes from selling ammunitions, you know?"

■ The evidence also suffices to show that Aref intentionally concealed the source of the money. Aref himself articulated that the purpose of the transaction was that "sometimes you want to, what you say, legally your money in the business." And the obviously circular nature of the cash-for-check transactions further evidences that Aref intended to conceal the money's source.

### B. Material Support Evidence

On the material support counts, Aref and Hossain each argue that the evidence was insufficient to show that they knew or intended that their material support was to

be used in preparation for, or in carrying out, the use of a weapon of mass destruction against a person in the United States. Hossain additionally argues that the evidence was insufficient because he did not know that Jaish–e–Mohammed ("JEM") was a designated terrorist organization or that it "has engaged or engages in terrorist activity," as required by 18 U.S.C. § 2339B(a)(1).

#### 1. Hossain

■ There was sufficient evidence to show beyond a reasonable doubt that Hossain intended to aid in preparing a missile attack in the United States. The jury heard that, on February 3, 2004, the CW suggested to Hossain that the missile would be used against the Pakistani ambassador to the United Nations.

The evidence also sufficed to show that Hossain knew that JEM engaged in terrorist activity because Hossain ostensibly knew that JEM's members were intending to attack the Pakistani ambassador with a missile.

#### 2. Aref

■ The evidence sufficed for a jury to conclude that Aref intended to aid in preparing a missile attack on American soil. The jury heard that, on January 14, 2004, the CW told Aref that the missile (whose proceeds were the subject of the money laundering scheme) was sent to New York, and on February 12, 2004, the CW told Aref (and Hossain) not to go to New York because of an impending missile attack.

#### C. Conspiracy Evidence

"To sustain a conspiracy conviction, the government must present some evidence from which it can reasonably be inferred that the person charged with conspiracy knew of the existence of the scheme alleged in the indictment and knowingly joined and participated in it." *United*

*States v. Rodriguez*, 392 F.3d 539, 545 (2d Cir.2004) (internal quotation marks omitted).

■ Aref argues that he merely served as witness to the transactions without participating in the conspiracy. Therefore, Aref argues that he cannot be convicted of the conspiracy counts because there was no evidence showing that he "in some sense promote[d] the [ ] venture[s] himself, ma[de] [them] his own, [and] ha[d] a stake in [their] outcome." *United States v. Ceballos*, 340 F.3d 115, 124 (2d Cir.2003) (internal quotation marks omitted). *Ceballos* held that "receipt of payment on a preexisting debt in one unlawful business with knowledge of the fact that the money was generated by a different unlawful enterprise" is insufficient to sustain a conspiracy conviction on the second unlawful business. *Id.* at 128. By contrast, the evidence here shows that Aref served a vital role in the transactions, tantamount to that of a notary public. Aref was not merely *aware* of the illegal scheme—he *participated* in it. *See id.* at 127.

#### D. False Statement Evidence (Aref)

■ Aref contends that the evidence was insufficient to show that he knowingly made a false statement to the FBI, in violation of 18 U.S.C. § 1001, when he denied knowing Mullah Krekar. Aref argues that the question of whether he "knew" Krekar was fundamentally ambiguous. "A question is fundamentally ambiguous when it is not a phrase with a meaning about which men of ordinary intellect could agree, nor one which could be used with mutual understanding by a questioner and answerer unless it were defined at the time it were sought and offered as testimony.... [B]ecause the words used in the question have different meanings in different situations does not make them fundamentally ambiguous." *United States*

*v. Lighte,* 782 F.2d 367, 375 (2d Cir.1986) (internal quotation marks omitted). Whether Aref knows Krekar is not so inherently ambiguous to satisfy the *Lighte* standard.

Aref's conviction for making a false statement to the FBI was supported by sufficient evidence: the jury saw (1) several diary entries documenting meetings between Aref and Krekar (on one occasion, Aref met Krekar at the airport) and (2) Aref's concession that Krekar might have been his dinner guest.

## E. Predisposition Evidence (Hossain)

■ Hossain raised an entrapment defense. Entrapment is an affirmative defense with two elements: (1) the government induced the defendant to commit the crime, and (2) the defendant lacked the predisposition to commit the crime. *See United States v. Bala,* 236 F.3d 87, 94 (2d Cir.2000). Since the government conceded inducement, it was the government's burden to show beyond a reasonable doubt that Hossain was predisposed to commit the crime before his first contact with the CW, *see Jacobson v. United States,* 503 U.S. 540, 549 & n. 2, 112 S.Ct. 1535, 118 L.Ed.2d 174 (1992). The government's evidence of predisposition sufficed because it showed "the accused's ready response to the inducement" to commit the crime. *United States v. Salerno,* 66 F.3d 544, 547 (2d Cir.1995) (internal quotation mark omitted); *see also United States v. Harvey,* 991 F.2d 981, 993 (2d Cir.1993) ("*Jacobson* did not change the law so that when a suspect *promptly* avails himself of a government-sponsored opportunity to commit a crime, that suspect thereafter can successfully claim he was entrapped as a matter of law.").

## II. EVIDENTIARY RULINGS

### A. Admission of the Missile Against Aref

■ The missile itself was introduced into evidence. Aref argues that the missile was inadmissible against him because he had never seen it. "Where a defendant is a member of a conspiracy, all the evidence admitted to prove that conspiracy, even evidence relating to acts committed by co-defendants, is admissible against the defendant." *United States v. Salameh,* 152 F.3d 88, 111 (2d Cir.1998). Since the missile was admissible against Hossain, it was likewise admissible against Aref.

■ Aref also argues that the district court abused its discretion in rejecting Aref's proposed stipulation that the missile was a weapon of mass destruction. The "accepted rule [is] that the prosecution is entitled to prove its case free from any defendant's option to stipulate the evidence away" (unless "the point at issue is a defendant's legal status, dependent on some judgment rendered wholly independently of the concrete events of later criminal behavior charged against him"). *Old Chief v. United States,* 519 U.S. 172, 189–90, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997); *see also United States v. Velazquez,* 246 F.3d 204, 211 (2d Cir.2001) (holding that the district court did not abuse its discretion in admitting autopsy photos showing the extent of the victim's bruising, even though the defendant offered to stipulate that the assault had occurred).

### B. Agent Coll's Opinion Testimony

■ Aref challenges admission of Agent Coll's opinions that (1) Aref knew the scheme was illegal, (2) Aref set eyes on the missile's trigger mechanism, and (3) Aref believed he had power to issue fatwas. The three disputed statements were made in response to Aref's questions on

cross-examination. We thus deem Aref's challenges waived and decline to consider them on appeal. *See Ohler v. United States,* 529 U.S. 753, 755, 120 S.Ct. 1851, 146 L.Ed.2d 826 (2000) ("Generally, a party introducing evidence cannot complain on appeal that the evidence was erroneously admitted.").

### C. Transcript Containing Words "Send Terrorist"

■ Aref argues that the district improperly admitted an audio recording transcript containing the words "send terrorist." "The district court's decision to admit the transcript is reviewed for abuse of discretion." *United States v. Ben–Shimon,* 249 F.3d 98, 101 (2d Cir.2001). The parties submitted the recording for an audibility hearing, and Judge McAvoy "clearly heard" the word "terrorist." Our independent review of the recording in question convinces us that it was no abuse of discretion for Judge McAvoy to admit the transcript.

### D. Aref's Diary

■ Aref argues that his diary should have been excluded as more prejudicial than probative. Because our review of the record reveals no indication that Aref objected on this ground below, we review for plain error. *See* Fed.R.Crim.P. 52(b); *United States v. Yu–Leung,* 51 F.3d 1116, 1121 (2d Cir.1995). In light of the diary's probative value on the issues of motive and intent, admission of the diary was not plainly erroneous.

### E. Aref's IMK Magazine and Speeches

■ The government sought to establish that IMK is a foreign political organization. Aref contends that his IMK Magazine and speeches were erroneously admitted because they were more prejudicial than probative. Not so. The IMK Magazine was probative on the issue of whether he knew Mullah Krekar (an IMK leader), whether he was a member of IMK, and whether he knew what a missile was. The speeches were probative of whether Aref was a member of IMK and whether Aref had motive and intent to commit the crime.

### F. Evan Kohlmann's Expert Testimony

■ Aref and Hossain argue that Kohlmann was unqualified to testify as an expert. The Federal Rules of Evidence "provide a liberal standard for the admissibility of expert testimony." *United States v. Dukagjini,* 326 F.3d 45, 52 (2d Cir.2003) (amended op.). Upon review of the record, we conclude that it was no abuse of discretion for the district court to qualify Kohlmann as an expert on both JEI Bangladesh, IMK, and other Kurdish groups.

Any suggestion that the district court improperly delegated its gatekeeping function to the jury is specious. The record reflects that Judge McAvoy himself heard Kohlmann's credentials and qualified Kohlmann as an expert before Kohlmann offered any expert testimony.

### G. The "Targeting Instruction"

■ The district court charged the jury that the FBI had "good and valid reasons" to target Aref, which are of no concern to the jury. Aref contends that the instruction shifted the burden of proof, as demonstrated by his acquittals on all but two substantive money laundering counts. We disagree. The two counts of conviction were based on the only two financial transactions following the CW's final reminder that his money came from selling weapons to mujahideen.

■ Aref additionally argues that the instruction was impermissible because Aref did not "open the door" to such evidence. But Aref's counsel said in the

opening statement that "the Government, before they begin, selects their person; they choose a person that they're going to try to put into a situation." Aref argues on appeal that the reference was to the careful selection of the informant rather than the defendant; but the court's inference was also available.

## III. RULINGS REGARDING CLASSIFIED MATERIALS

### A. 18 U.S.C. § 3504

■ "[A]lthough [a] [§ 3504] claim need not be particularized, it may not be based upon mere suspicion but must at least appear to have a colorable basis before it may function to trigger the government's obligation to respond under § 3504." *United States v. Pacella*, 622 F.2d 640, 643 (2d Cir.1980) (internal quotation marks and citation omitted). Aref failed to state a colorable basis for his § 3504 claim. He merely (1) identified representations made by unnamed sources in a newspaper article, and (2) argued that the prosecutor's pattern of objections shows that he must have been surveilled electronically. This does not suffice. *See United States v. Dien*, 598 F.2d 743, 746 (2d Cir.1979) (deeming "frivolous" a request for information under § 3504 when the request lacked "any substantial support for the claim of illegality," and holding that such request "triggered no obligation" for the government to respond); *United States v. James*, 609 F.2d 36, 51 (2d Cir.1979) (holding that the defendant failed to make a colorable claim so as to trigger an obligation for the government to respond under § 3504 when the defendant's only basis for suspecting the existence of illegal surveillance was that the Strike Force on Organized Crime was involved in his investigation); *see also In re Buscaglia*, 518 F.2d 77, 78 (2d Cir.1975) (declining to decide whether the Strike Force's attorney's refusal to affirm or

deny that eavesdropping occurred at defendant's social club was sufficient to trigger government's response under § 3504). *But see In re Grand Jury Investigation 2003r01576*, 437 F.3d 855, 857–58 (9th Cir. 2006) (amended op.) (holding that having heard clicks during phone calls and alleging mail tampering sufficed to make a colorable claim requiring government response under § 3504).

### B. Constitutionality of the Government's *Ex Parte* Opposition to the Suppression Motion

■ Aref argues that his Due Process rights were violated when the district court entertained *ex parte* opposition to his motion to suppress classified information. *Cf. United States v. Abuhamra*, 389 F.3d 309, 321 (2d Cir.2004) (holding Due Process violated when the district court considered *ex parte* opposition to a bail application in the absence of extraordinary circumstances). As we acknowledged in *Abuhamra*, when evidence is classified due to its national security import, we are "obliged to conduct a very different analysis." *Id.* at 324. The Due Process inquiry is a balancing test:

> [P]rocedural due process is a flexible standard that can vary in different circumstances depending on the private interest that will be affected by the official action as compared to the Government's asserted interest, including the function involved and the burdens the Government would face in providing greater process. A court must carefully balance these competing concerns, analyzing the risk of an erroneous deprivation of the private interest if the process were reduced and the probable value, if any, of additional or substitute safeguards.

*Id.* at 318 (internal quotation marks and citations omitted). Our review of the record convinces us that (1) the government

had a weighty interest in safeguarding national security information, (2) there was little or no chance that Aref would be deprived erroneously of his private interest, and (3) additional safeguards would probably have been of little value.

 Aref also argues that he had a Sixth Amendment right to confront the classified evidence. But no classified evidence was admitted at trial; the district court evaluated classified information in order to determine whether Aref was entitled to discover it.

### C. Miscellaneous

We do not reach amici's arguments that the National Security Agency's Terrorist Surveillance Program is illegal because the question is not presented on the record before us.

### IV. CONCLUSION

We have reviewed the appellants' remaining arguments and find them to be without merit. For the foregoing reasons, the judgment of the district court is **AFFIRMED**.