# Illinois Official Reports

## Appellate Court

*People ex rel. Madigan v. Stateline Recycling, LLC*, **2018 IL App (2d) 170860**

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE *ex rel.* LISA MADIGAN, Attorney General of the State of Illinois, Plaintiff-Appellee, v. STATELINE RECYCLING, LLC, and ELIZABETH REENTS, Defendants (Elizabeth Reents, Defendant-Appellant). |
| District & No. | Second District<br>Docket No. 2-17-0860 |
| Filed | December 27, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Winnebago County, No. 17-CH-60; the Hon. J. Edward Prochaska, Judge, presiding. |
| Judgment | Reversed; vacated; cause remanded with directions. |
| Counsel on Appeal | Mark Rouleau, of Rockford, for appellant.<br><br>Lisa Madigan, Attorney General, of Chicago (David L. Franklin, Solicitor General, and Aaron T. Dozeman, Assistant Attorney General, of counsel), for appellee. |
| Panel | JUSTICE HUDSON delivered the judgment of the court, with opinion.<br>Presiding Justice Birkett and Justice Burke concurred in the judgment and opinion. |

**OPINION**

¶ 1        Defendant, Elizabeth Reents, appeals from the trial court's order finding her in "friendly contempt" and imposing a monetary sanction of $100 for failing to comply with a discovery order. The discovery order requires that she allow the Illinois Attorney General, the Illinois Environmental Protection Agency (IEPA), and their representatives to inspect her commercial property, pursuant to the Attorney General's discovery request under Illinois Supreme Court Rule 214(a) (eff. July 1, 2014). Reents argues that we should reverse the discovery order because the inspection amounts to an impermissible warrantless search of her property, in violation of her rights under the fourth amendment to the United States Constitution (U.S. Const., amend. IV) and article I, section 6, of the Illinois Constitution (Ill. Const. 1970, art. I, § 6). For the following reasons, we reverse the discovery order, vacate the contempt order, and remand for further proceedings.

¶ 2                                          I. BACKGROUND

¶ 3        The subject matter of this environmental-enforcement action is a parcel of property of approximately 10 acres located at 2317 Seminary Street in Rockford (Site). Reents allegedly became the owner of the Site when she obtained a tax deed to the property; the deed was recorded on April 8, 2015.

¶ 4        On January 17, 2017, the Attorney General, "on her own motion and at the request of the Illinois Environmental Protection Agency," sued Reents and defendant Stateline Recycling, LLC (Stateline Recycling), for violations of the Environmental Protection Act (Act) (415 ILCS 5/1 *et seq.* (West 2016)). The Attorney General filed an amended complaint after the trial court granted Reents's motion to dismiss on the ground that the particular counts against each defendant were not separated.

¶ 5        In the amended complaint, the counts against both Reents and Stateline Recycling include open dumping (*id.* § 21(a)); disposal, storage, and abandonment of waste at an unpermitted facility (*id.* § 21(e)); open dumping resulting in litter and the deposition of construction and demolition debris (*id.* § 21(p)); and failure to pay "clean construction or demolition debris" fill operation fees (*id.* § 22.51(a)).[1] The Attorney General seeks civil penalties of $50,000 for each violation and $10,000 for each day that the violation continues, injunctive relief, and costs pursuant to the Act. *Id.* §§ 42, 43.

¶ 6        The Attorney General alleges that Stateline Recycling and/or its corporate predecessor, Busse Development & Recycling, Inc. (Busse), conducted an operation for the dumping of construction and demolition debris at the Site. According to the amended complaint, a July 29, 2015, inspection by an IEPA inspector revealed piles of mixed concrete, brick, painted cinder blocks, asphalt, and soil at the Site, with some of the mixed material placed above the ground. There was no indication of recycling the material, although a Stateline Recycling representative relayed an intention to recycle it. The amended complaint further alleges that, at a subsequent inspection of the Site, on July 14, 2016, the IEPA inspector found the gate to the Site open but no personnel present. The inspector left, but from his vantage point by the gate,

_____

[1]There are two additional counts against Stateline Recycling only: conducting a waste-disposal operation without a permit (415 ILCS 5/21(d)(2) (West 2016)) and violation of the clean-construction or demolition-debris-fill operation regulations (*id.* § 22.51(a), (b)(3)).

he observed the continued presence of the piles of mixed concrete, brick, painted cinder blocks, asphalt, and soil.

¶ 7 On April 6, 2017, the Attorney General issued Reents a discovery request pursuant to Rule 214(a) for access to the Site. Rule 214(a), titled "Discovery of Documents, Objects, and Tangible Things—Inspection of Real Estate," provides, *inter alia*, that any party may by written request direct any other party to permit access to real estate "for the purpose of making surface or subsurface inspections or surveys or photographs, or tests or taking samples *** whenever the nature, contents, or condition of such *** real estate is relevant to the subject matter of the action." Ill. S. Ct. R. 214(a) (eff. July 1, 2014). The Attorney General's Rule 214(a) request sought to:

> "Allow representatives of the Illinois Attorney General access to the real property controlled and/or owned by Reents located at 2317 Seminary Street, Rockford, Winnebago County, Illinois, including any buildings, trailers, or fixtures thereupon. Plaintiff requests access on May 5, 2017 at 11 a.m., or at such other time as may be agreed between the parties. At this inspection, representatives of the Illinois Environmental Protection Agency may also accompany Attorney General representatives and conduct an inspection pursuant to their authority under 415 ILCS 5/4 (2014)."

¶ 8 Reents objected to the discovery request on the grounds that it was an improper attempt to circumvent the constitutional requirement for a warrant and therefore violated the fourth amendment to the United States Constitution (U.S. Const., amend. IV) and article I, section 6, of the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, § 6).

¶ 9 After unsuccessful efforts to resolve the discovery dispute pursuant to Illinois Supreme Court Rule 201(k) (eff. May 29, 2014), on July 25, 2017, the Attorney General filed a motion to compel Reents to permit the inspection. The Attorney General argued that she is entitled to inspect the Site under Rule 214(a), because the Site is relevant to the subject matter of the lawsuit: a complaint for violations of the Act pertaining to the operation of a landfill on the Site. The Attorney General also argued that IEPA representatives should be allowed to accompany her representatives during the inspection because the IEPA has its own independent statutory authority to inspect the Site pursuant to the Act. See 415 ILCS 5/4(c) (West 2016) (granting the IEPA "authority to conduct a program of continuing surveillance and of regular or periodic inspection *** of refuse disposal sites"); *id.* § 4(d)(1) (granting the IEPA authority "[i]n accordance with constitutional limitations *** to enter at all reasonable times upon any private or public property for the purpose of *** [i]nspecting and investigating to ascertain possible violations of this Act"). Indeed, according to the Attorney General, landfill operations are a "highly regulated commercial activity"; thus, IEPA inspections can be reasonably anticipated.

¶ 10 In response to the motion to compel, Reents argued that there was no legal authority to support the use of Rule 214(a) to permit the government to search her property. Her position was that the prior inspections, on July 29, 2015, and July 14, 2016, amounted to unconstitutional warrantless searches and that the Attorney General sought to use this civil action to accomplish another warrantless search. Reents further disputed the characterization that she is engaged in a "highly regulated commercial activity." She stated that she is a "property owner who recently came into possession by tax purchase of a piece of property" and that "[t]here is no evidence that she has conducted or permitted the conduct of regulated

activities upon her property." Reents pointed out that the Site had been ordered closed in March 2011 in a prior environmental-enforcement action, brought by the Attorney General against Busse.

¶ 11　　In reply, the Attorney General maintained that the plain language of Rule 214(a) reflects that it applies to all parties in civil litigation and does not except the State. Moreover, the Attorney General argued that the lawsuit was not a criminal case and that the protections inherent in the civil discovery rules satisfy constitutional privacy concerns.

¶ 12　　At the hearing on the motion to compel, the Attorney General reiterated that Rule 214(a) allows an inspection of the Site. The Attorney General also challenged Reents's expectation of privacy, because the Site is a landfill—a "highly regulated industry" subject to recurring inspections under the Act: "If you look at the regulations, you know, there are pages and pages. There are over a hundred pages of regulations for landfills. And so the idea that this is somehow an unregulated industry or *** anything less than a highly regulated industry is, is just simply not true."

¶ 13　　Reents acknowledged that the Site might have been a landfill in the past but disputed that it has been a landfill under her ownership. Reents stated that the judgment in the 2011 environmental-enforcement action was not registered in the chain of title; "had it been[,][she] probably wouldn't got [*sic*] in this property." Reents also argued that the Attorney General should be required to obtain an administrative warrant, as the initiation of a civil lawsuit was not grounds to circumvent the fourth amendment.

¶ 14　　Following the hearing, the trial court granted the Attorney General's motion to compel Reents's compliance with the Rule 214(a) request to inspect the Site. The trial court reasoned:

　　"I think Supreme Court Rule 214 does apply to all civil cases and it indicates that, that any party may request direct [*sic*] by any other party permission, access to real estate for purposes of making surface or subsurface inspections, surveys, photographs, taking tests, whenever the nature[,] contents[,] or condition of the real estate is irrelevant [*sic*] to the subject matter. Here, I think, clearly the subject, the subject matter is the, is the premises that is owned currently by Elizabeth Reents.

　　It is clearly an—alleged to the violations of the Illinois EPA that's what's alleged in the complaint. It's all about the property; it's all about the subject matter. And, I think, Supreme Court Rule 214 gives the plaintiff absolute right to, to inspect that property. This is not a—it's not a criminal case. I think that although certainly the [f]ourth [a]mendment isn't thrown out the window, this is not a criminal case, it's a civil case.

　　The landfill is a highly regulated activity, alleged landfill is a highly regulated activity under the Illinois EPA and, I think, the physical status of the site is highly relevant in this particular case.

　　So I am going to grant the motion to compel over objection."

¶ 15　　The order granting the motion to compel provided that "[p]laintiff's Motion to Compel as to the Rule 214(a) inspection of Reents's Real Estate is granted, including the Illinois EPA participating in the inspection" and that enforcement was stayed for one week, "pending Reents's determination to seek a friendly contempt to challenge the decision." The trial court subsequently entered an order "regarding the Court's order compelling a SCR 214(a) Inspection of the subject premises commonly known as 2317 N. Seminary, Rockford, IL," holding Reents in "friendly contempt" and imposing a monetary sanction of $100 based upon

"Reents having indicated her respectful intent to refuse to comply with this Court's order so that she might appeal the issue." The trial court stayed the order pending appeal. Reents timely appealed pursuant to Illinois Supreme Court Rule 304(b)(5) (eff. Mar. 8, 2016).[2]

## II. ANALYSIS

The issue in this case is whether Reents was justified in refusing to obey the trial court's discovery order compelling her compliance with the Attorney General's Rule 214(a) request to inspect the Site. Discovery orders are not final orders and therefore not ordinarily appealable. *Norskog v. Pfiel*, 197 Ill. 2d 60, 69 (2001). However, the correctness of a discovery order may be tested through a contempt proceeding, as Reents did here. See *id.* An order finding a person in contempt of court and imposing a monetary or other penalty is appealable pursuant to Rule 304(b)(5). Our review of the trial court's contempt finding requires review of the order on which it was based. *Norskog*, 197 Ill. 2d at 69. Discovery orders are typically reviewed under the abuse-of-discretion standard. *Carlson v. Jerousek*, 2016 IL App (2d) 151248, ¶ 24; *Kaull v. Kaull*, 2014 IL App (2d) 130175, ¶ 22. Where, however, the appeal involves a question of law, such as a constitutional challenge, the *de novo* standard of review applies. *Kaull*, 2014 IL App (2d) 130175, ¶ 22.

Reents raises a constitutional challenge. She argues that the Attorney General's Rule 214(a) discovery request amounts to a search under the fourth amendment to the United States Constitution and article I, section 6, of the Illinois Constitution, because the government, not a private litigant, is seeking the inspection. We review this constitutional claim *de novo*. See *id.*

Initially, however, we address the Attorney General's request that we take judicial notice of proceedings that occurred in the trial court subsequent to the filing of the contempt order and Reents's notice of appeal. Namely, the Attorney General successfully moved for an administrative warrant, authorizing IEPA representatives to enter the Site to "observe, inspect, and photograph the Site, and all operations, processes, structures and materials upon said Site." The Attorney General represented at oral argument that the State has thus abandoned reliance upon section 4(d)(1) of the Act (415 ILCS 5/4(d)(1) (West 2016)) as a basis to authorize the accompaniment of IEPA representatives at the inspection. We take judicial notice of the trial court's order and note that its propriety is not before this court. See *People v. Matthews*, 2016 IL 118114, ¶ 5 n.1. Thus, the sole issue is whether the trial court properly compelled Reents's compliance with the Attorney General's request to inspect the Site pursuant to Rule 214(a). We turn to Reents's constitutional challenge to the discovery order.

---

[2]In addition to challenging the Rule 214(a) discovery request, Reents filed a motion, pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2016)), to quash any evidence obtained by the inspections in 2015 and 2016 and dismiss the case or, alternatively, to hold an evidentiary hearing to determine the lawfulness of the prior searches and the resulting evidence. The Attorney General responded that a motion *in limine*, not a section 2-615 motion, was the appropriate procedural mechanism to challenge the admissibility of evidence, and she also raised the same arguments set forth in the motion to compel. The trial court denied the motion without prejudice. The propriety of this ruling is not before this court.

A. Applicability of Constitutional Principles to the Discovery Order

The fourth amendment to the United States Constitution, applicable to the states through the fourteenth amendment (U.S. Const., amend. XIV), protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const., amend. IV. The Illinois Constitution states that "[t]he people shall have the right to be secure in their persons, houses, papers and other possessions against unreasonable searches, seizures, invasions of privacy or interceptions of communications by eavesdropping devices or other means" and providing that "[n]o warrant shall issue without probable cause, supported by affidavit particularly describing the place to be searched and the persons or things to be seized." Ill. Const. 1970, art. I, § 6.[3]

The fourth amendment was crafted in response to the " 'reviled "general warrants" and "writs of assistance" of the colonial era, which allowed British officers to rummage through homes in an unrestrained search for evidence of criminal activity.' " *Carpenter v. United States*, 585 U.S. ___, ___, 138 S. Ct. 2206, 2213 (2018) (quoting *Riley v. California*, 573 U.S. ___, ___, 134 S. Ct. 2473, 2494 (2014)). Indeed,

> "[o]pposition to such searches was in fact one of the driving forces behind the Revolution itself. In 1761, the patriot James Otis delivered a speech in Boston denouncing the use of writs of assistance. A young John Adams was there, and he would later write that '[e]very man of a crowded audience appeared to me to go away, as I did, ready to take arms against writs of assistance.' " *Riley*, 573 U.S. at ___, 134 S. Ct. at 2494 (quoting 10 John Adams, Works of John Adams 247-48 (Charles F. Adams ed. 1856)).

The speech became " 'the first scene of the first act of opposition to the arbitrary claims of Great Britain. Then and there the child Independence was born.' " *Id.* at ___, 134 S. Ct. at 2494 (quoting Adams, *supra*, at 248).

It was against this historical backdrop that the United States Supreme Court first addressed the parameters of the fourth amendment in *Boyd v. United States*, 116 U.S. 616 (1886). *Boyd* was a civil forfeiture case against 35 cases of plate glass. The government alleged that the partners of E.A. Boyd & Sons fraudulently imported the plate glass without paying the prescribed tax. The district court ordered the partners to produce an invoice regarding the value and quantity of the imported glass. *Id.* at 617-19. The statute under which the notice to produce was issued stated that if they failed to produce the document, the government's allegations "shall be taken as confessed." (Internal quotation marks omitted.) *Id.* at 619-20.

The Court in *Boyd* held the proceeding and the statute unconstitutional, with its rationale encompassing both fourth and fifth amendment[4] principles as it recounted the historical

---

[3]Reents does not argue that the Illinois Constitution provides greater protection here. In this regard, our supreme court has stated that the fourth amendment provides the same level of protection as the search-and-seizure provision of the Illinois Constitution. *People v. Lampitok*, 207 Ill. 2d 231, 240-41 (2003). "The narrow exception *** to the lockstep doctrine in the fourth amendment context is not relevant to this case." *Id.* (citing *People v. Krueger*, 175 Ill. 2d 60, 75-76 (1996)).

[4]The fifth amendment to the United States Constitution provides, *inter alia*, that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const., amend. V.

foundation of the constitutional provisions. *Id.* at 624-32. In finding that the order to produce the invoice amounted to a search and seizure under the fourth amendment, the Court reasoned: "[A] compulsory production of a man's private papers to establish a criminal charge against him, or to forfeit his property, is within the scope of the Fourth Amendment to the Constitution, in all cases in which a search and seizure would be[,] because it is a material ingredient, and effects the sole object and purpose of search and seizure." *Id.* at 622.

¶ 25    But, the Court stated, the question remained: was the search and seizure, or its equivalent—the "compulsory production of a man's private papers, to be used in evidence against him in a proceeding to forfeit his property for alleged fraud against the revenue laws"—an *unreasonable* search and seizure within the meaning of the fourth amendment? *Id.* In concluding that it was, the Court noted the relation between the fourth and fifth amendments and reasoned that seizing a man's private papers to be used in evidence against him was not substantially different from compelling him to be a witness against himself. *Id.* at 634-35.

¶ 26    The Court also contrasted the search and seizure under consideration—that of a person's private documents for the purpose of obtaining the information contained therein or using the documents as evidence against the person—with searches and seizures of stolen goods or goods concealed to avoid the payment of taxes. *Id.* at 623-24. With respect to searches and seizures of stolen goods or goods concealed to avoid the payment of taxes, the person from whom the property is seized lacks a superior proprietary interest in the goods: the owner from whom goods were stolen is entitled to their possession, and the government has an interest and right to concealed goods until the taxes are paid. *Id.* As well, the law had long authorized the seizure of such goods. *Id.* The government has no comparable interest in a person's private documents. See *id.* at 624.

¶ 27    The Court in *Boyd* rejected the notion that the civil form of the proceeding precluded constitutional protection, stating:

> "Reverting then to the peculiar phraseology of this act, and to the information in the present case, which is founded on it, we have to deal with an act which expressly excludes criminal proceedings from its operation (though embracing civil suits for penalties and forfeitures), and with an information not technically a criminal proceeding, and neither, therefore, within the literal terms of the Fifth Amendment to the Constitution any more than it is within the literal terms of the Fourth. Does this relieve the proceedings or the law from being obnoxious to the prohibitions of either? We think not; we think they are within the spirit of both." *Id.* at 633.

As "suits for penalties and forfeitures, incurred by the commission of offences against the law, are of this quasi-criminal nature, we think that they are within the reason of criminal proceedings for all the purposes of the Fourth Amendment [to] the Constitution, and of that portion of the Fifth Amendment which declares that no person shall be compelled in any criminal case to be a witness against himself." *Id.* at 634. Indeed, the proceeding, though civil in form and lacking in "many of the aggravating incidents of actual search and seizure," was criminal in nature, given its substance and substantial purpose. *Id.* at 634-35.

¶ 28    Concerned by the prospect that the government could extort the production of private papers through civil proceedings, the Court cautioned:

> "It may be that it is the obnoxious thing in its mildest and least repulsive form; but illegitimate and unconstitutional practices get their first footing in that way, namely, by silent approaches and slight deviations from legal modes of procedure. This can only

be obviated by adhering to the rule that constitutional provisions for the security of person and property should be liberally construed. A close and literal construction deprives them of half their efficacy, and leads to gradual depreciation of the right, as if it consisted more in sound than in substance. It is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon." *Id.* at 635.

¶ 29 As fourth and fifth amendment jurisprudence developed, the Court wrestled with the underpinnings of *Boyd*. The case was understood to hold that a seizure, under warrant or otherwise, of purely evidentiary materials violated the fourth amendment and that the seized materials were inadmissible by virtue of the fifth amendment privilege against self-incrimination. *Fisher v. United States*, 425 U.S. 391, 407 (1976). Over time, though, the Court dissected the conflation of the fourth amendment's rule against unreasonable searches and seizures with the fifth amendment's ban on compelled self-incrimination. See *id.* at 407-08. The focus of fifth amendment case law moved toward the protection of a person's right against incrimination by the person's own compelled testimonial communication rather than an independent prohibition of the compelled production of every type of incriminating evidence. See, *e.g.*, *id.* at 410-14 (declining to extend the protection of the fifth amendment to documents prepared by taxpayers' accountants and given by the taxpayers to their attorneys). In this regard, the Court also established that an individual cannot rely on the fifth amendment to avoid producing a collective entity's records the individual holds in a representative capacity (as the defendant partners in *Boyd* essentially had). See *Bellis v. United States*, 417 U.S. 85, 87-91 (1974). Thus, a law firm partner could not invoke the fifth amendment right against self-incrimination to avoid a subpoena seeking partnership records. See *id.* at 95-96.

¶ 30 The Court ultimately rejected what had come to be regarded as the "mere evidence" rule set forth in *Boyd*—that the fourth amendment allowed the seizure of only the fruits or instrumentalities of a crime while prohibiting the seizure of "mere evidence" of a crime. See *Warden v. Hayden*, 387 U.S. 294, 301-04 (1967). The Court found the rule unsupported by the language of the fourth amendment. *Id.* at 298, 309-10 (holding that the fourth amendment did not preclude the seizure of a robbery suspect's clothing found by a police officer in a washing machine in the house that the suspect had entered, despite the fact that the clothing was "mere evidence" with only evidentiary value as opposed to the actual fruits or instrumentalities of the robbery).

¶ 31 As fourth amendment jurisprudence was refined, the Court continued to examine the scope of the constitutional protection in the context of the compelled production of documents pursuant to governmental demand. In *Hale v. Henkel*, 201 U.S. 43 (1906), *overruled in part on other grounds by Murphy v. Waterfront Comm'n of New York Harbor*, 378 U.S. 52 (1964), a case involving an antitrust investigation, a corporate officer refused to comply with a grand jury subpoena requiring him to testify and produce what essentially amounted to all of the company's books and records. While noting that the fourth amendment was not intended to interfere with the power of courts to compel the production of documentary evidence, the Court nevertheless stated that ordering the production of books and papers can constitute an unreasonable search and seizure. *Id.* at 73. The Court found the subpoena at issue "far too sweeping in its terms" to be considered reasonable. *Id.* at 76. "[S]ome necessity should be shown, either from an examination of the witnesses orally, or from the known transactions of these companies with the other companies implicated, or some evidence of their materiality

produced, to justify an order for the production of such a mass of papers." *Id.* at 77. The Court likened the overly broad subpoena to the historically abhorred general warrant—both "equally indefensible." *Id.*

¶ 32    This sentiment was echoed in *Federal Trade Comm'n v. American Tobacco Co.*, 264 U.S. 298, 305 (1924), where the Federal Trade Commission sought through administrative subpoenas access to the "accounts, books, records, documents, memoranda, contracts, papers and correspondence" of tobacco companies under investigation for unfair competition and price-fixing. The Court declined to enforce the subpoenas, concluding:

> "Anyone who respects the spirit as well as the letter of the Fourth Amendment would be loath to believe that Congress intended to authorize one of its subordinate agencies to sweep all our traditions into the fire [citation], and to direct fishing expeditions into private papers on the possibility that they may disclose evidence of crime. *** It is contrary to the first principles of justice to allow a search through all of respondents' records, relevant or irrelevant, in the hope that something will turn up." *Id.* at 305-06.

¶ 33    In *Oklahoma Press Publishing Co. v. Walling*, 327 U.S. 186, 202 (1946), however, the Court rejected a fourth amendment challenge to the administrative subpoenas at issue, highlighting the distinction between a "constructive" search, like a subpoena, and an actual search and seizure. There, in an investigation into fair labor practices, the administrator for the Department of Labor's Wage and Hour Division issued subpoenas to the Oklahoma Press Publishing Company for the production of records relating to its labor practices and coverage under the governing statute. *Id.* at 189. In holding that the subpoenas may be enforced, the Court reasoned that the "short answer to the Fourth Amendment objections is that the records in these cases present no question of actual search and seizure, but raise only the question whether orders of court for the production of specified records have been validly made; and no sufficient showing appears to justify setting them aside." *Id.* at 195. The Court explained that the "primary source of misconception concerning the Fourth Amendment's function lies perhaps in the identification of cases involving so-called 'figurative' or 'constructive' search with cases of actual search and seizure. Only in this analogical sense can any question related to search and seizure be thought to arise in situations which, like the present ones, involve only the validity of authorized judicial orders." *Id.* at 202. The Court concluded that "the Fourth [Amendment], if applicable, at the most guards against abuse only by way of too much indefiniteness or breadth in the things required to be 'particularly described.' " *Id.* at 208. Thus, the Court stated, an administrative subpoena is enforceable when the investigation is authorized by Congress and is for a purpose Congress may order, the documents sought are relevant to the inquiry, and the information sought is reasonable, including particularity in the description of the place to be searched and the person or things to be seized. *Id.* at 209.

¶ 34    The Court nevertheless subsequently confirmed the applicability of the fourth amendment to an administrative subpoena and reviewed the requirements that must be met for its enforcement: " 'It is now settled that, when an administrative agency subpoenas corporate books or records, the Fourth Amendment requires that the subpoena be sufficiently limited in scope, relevant in purpose, and specific in directive so that compliance will not be unreasonably burdensome.' " *Donovan v. Lone Steer, Inc.*, 464 U.S. 408, 415 (1984) (quoting *See v. City of Seattle*, 387 U.S. 541, 544 (1967)).

¶ 35    While issues regarding the reach of the fourth amendment continued to evolve, there was no dispute that the fourth amendment's prohibition on unreasonable searches and seizures

applies not only to private homes but also to commercial premises. See *See*, 387 U.S. at 543; accord *Marshall v. Barlow's Inc.*, 436 U.S. 307, 311 (1978) ("The Warrant Clause of the Fourth Amendment protects commercial buildings as well as private homes. To hold otherwise would belie the origin of that Amendment, and the American colonial experience."). Thus, in *See*, the Court held that a warehouse owner could not be prosecuted for refusing the fire department's attempt to enter his locked commercial warehouse for a warrantless code-enforcement inspection. *See*, 387 U.S. at 541, 546. In so holding, the Court considered the fourth amendment framework that must be satisfied in the context of an administrative subpoena for corporate records, *i.e.*, the subpoena must be "sufficiently limited in scope, relevant in purpose, and specific in directive so that compliance will not be unreasonably burdensome." *Id.* at 544 (citing, *inter alia*, *Oklahoma Press Publishing*, 327 U.S. 186, and *Hale*, 201 U.S. 43). The Court found "strong support in these subpoena cases for our conclusion that warrants are a necessary and a tolerable limitation on the right to enter upon and inspect commercial premises." *Id.* Indeed, in light of the "analogous investigative functions performed by the administrative subpoena and the demand for entry, we find untenable the proposition that the subpoena, which has been termed a 'constructive' search [(*Oklahoma Press Publishing*, 327 U.S. at 202)], is subject to Fourth Amendment limitations which do not apply to actual searches and inspections of commercial premises." *Id.* at 545.

¶ 36    Of course, this fourth amendment protection was held applicable to the administrative search of a personal residence as well. See *Camara v. Municipal Court of the City & County of San Francisco*, 387 U.S. 523, 527-30 (1967). In *Camara*, decided the same day as *See*, the Court held that an apartment building tenant was justified in invoking the fourth amendment to refuse an annual inspection of his premises by a municipal health inspector. *Id.* at 540. In determining that the civil nature of the inspection program did not preclude fourth amendment protection, the Court reasoned that the basic purpose of the fourth amendment is "to safeguard the privacy and security of individuals against arbitrary invasions by government officials." *Id.* at 528. It would be "anomalous to say that the individual and his private property are fully protected by the Fourth Amendment only when the individual is suspected of criminal behavior." *Id.* at 530. Recognizing, however, that the purpose of the inspection program was building safety, not discovery of evidence of a crime, the Court also set forth a framework for determining whether the probable cause requirement for a warrant had been met, focusing on the governmental interest at stake and whether reasonable legislative or administrative standards for conducting the inspection had been satisfied with respect to the particular dwelling. *Id.* at 537-38.

¶ 37    As *Camara* reasoned, and as the Court continued to recognize, the fourth amendment applies in the civil context as well as the criminal context. *Soldal v. Cook County*, 506 U.S. 56, 67 (1992) (noting that the court of appeals "acknowledged what is evident from our precedents—that the [Fourth] Amendment's protection applies in the civil context as well"). Although frequently invoked in criminal cases, the fourth amendment protects against governmental intrusion into the homes and affairs of all citizens. *Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986). Regardless of whether the claim is made in a criminal or a civil proceeding, "[t]he gravamen of a Fourth Amendment claim is that the complainant's legitimate expectation of privacy has been violated by an illegal search or seizure." *Id.*

¶ 38    Over time and as technology advanced, the Court continued to emphasize protecting privacy interests in addition to taking a property-rights approach as it addressed fourth

amendment challenges. See, *e.g.*, *Katz v. United States*, 389 U.S. 347, 353 (1967) (holding that the government's electronic surveillance of the defendant's telephone conversations in a telephone booth violated the fourth amendment and stating that "the Fourth Amendment protects people—and not simply 'areas'—against unreasonable searches and seizures"). In determining that the government's acquisition of "cell-site location information" records amounted to a search under the fourth amendment, the Court recently reiterated that privacy interests, in addition to property rights, guide fourth amendment analysis. *Carpenter*, 585 U.S. at ___, 138 S. Ct. at 2213. Thus, "[w]hen an individual 'seeks to preserve something as private,' and his expectation of privacy is 'one that society is prepared to recognize as reasonable,' we have held that official intrusion into that private sphere generally qualifies as a search and requires a warrant supported by probable cause." *Id.* at ___, 138 S. Ct. at 2213 (quoting *Smith v. Maryland*, 442 U.S. 735, 740 (1979)). Although not definitively resolved by any "single rubric," the analysis of which expectations of privacy are entitled to fourth amendment protection is "informed by historical understandings 'of what was deemed an unreasonable search and seizure when [the Fourth Amendment] was adopted.' " *Id.* at ___, 138 S. Ct. at 2213-14 (quoting *Carroll v. United States*, 267 U.S. 132, 149 (1925)). In defining the framework for this analysis, the Court set forth two "basic guideposts." *Id.* at ___, 138 S. Ct. at 2214. First, as established in *Boyd*, the fourth amendment seeks to secure " 'the privacies of life' " against " 'arbitrary power.' " *Id.* at ___, 138 S. Ct. at 2214 (quoting *Boyd*, 116 U.S. at 630). Second, and in a related vein, "a central aim of the Framers was 'to place obstacles in the way of a too permeating police surveillance.' " *Id.* at ___, 138 S. Ct. at 2214 (quoting *United States v. Di Re*, 332 U.S. 581, 595 (1948)).

¶ 39    Against this legal landscape, we turn to the issue presented in this case—whether the fourth amendment applies to the discovery order compelling Reents's compliance with the Attorney General's Rule 214(a) request to inspect the Site. We are compelled to hold that it does. In this environmental-enforcement action, the Attorney General seeks to enforce our state's environmental controls against what is alleged to be unpermitted, open dumping of construction and demolition debris at a landfill, in violation of the statutory strictures. The amended complaint seeks civil penalties of $50,000 for each violation and $10,000 for each day the violation continues, injunctive relief, and costs. See 415 ILCS 5/42, 43 (West 2016). It is through the instrument of this civil action that the Attorney General issued the discovery request under Rule 214(a) for unrestricted access to the Site and "any buildings, trailers, or fixtures thereupon." See Ill. S. Ct. R. 214(a) (eff. July 1, 2014) (providing that any party may by written request direct any other party to permit access to real estate "for the purpose of making surface or subsurface inspections or surveys or photographs, or tests or taking samples *** whenever the nature, contents, or condition of such *** real estate is relevant to the subject matter of the action").

¶ 40    Yet what is at stake here is Reents's privacy interest in her commercial property. As discussed *infra*, this is a diminished expectation of privacy, as the property is a closely regulated landfill. However, Reents undoubtedly maintains a privacy interest that society is prepared to recognize as reasonable. Se*e New York v. Burger*, 482 U.S. 691, 699 (1987). From *Boyd* in 1886 through *Carpenter* in 2018, the constant throughout fourth amendment jurisprudence is that the privacies of life, such as one's private property, should be protected from governmental intrusion. In light of this jurisprudence and under the facts and

circumstances of this case, we must consider fourth amendment principles in reviewing the discovery order allowing governmental access to Reents's private property.

¶ 41    The Attorney General notes that this is a civil case, no criminal penalties are being sought, and there is no parallel criminal case pending against Reents. It seems we have come full circle, as the Supreme Court addressed the essence of these very claims in *Boyd*, involving a statute "embracing civil suits for penalties and forfeitures" and "an information not technically a criminal proceeding." *Boyd*, 116 U.S. at 633. The concepts in *Boyd* have evolved, but its heart holds true: the fourth amendment "seeks to secure 'the privacies of life' against 'arbitrary power.' " *Carpenter*, 585 U.S. at ___, 138 S. Ct. at 2214 (quoting *Boyd*, 116 U.S. at 630). The impetus for the governmental intrusion—whether civil or criminal in nature—is not determinative. See *Soldal*, 506 U.S. at 67; *Camara*, 387 U.S. at 530.

¶ 42    The Attorney General suggests that a routine discovery request made in the context of a civil enforcement action has no need for fourth amendment oversight. We cannot agree. As the Attorney General observes, Rule 214(a) allows the inspection of property relevant to the subject matter of the action, and the Site is of course relevant to this action alleging environmental violations there. See Ill. S. Ct. R. 214(a) (eff. July 1, 2014).

¶ 43    But relevance does not set the bar here. The government is the plaintiff against Reents under a statutory scheme that allows for substantial civil penalties, injunctive relief, and although not currently sought in this case, criminal penalties and forfeiture. See 415 ILCS 5/42 (West 2016) ("Civil penalties"); *id.* § 43 ("Injunctions or other necessary actions"); *id.* § 44 ("Criminal acts; penalties"); *id.* § 44.1 ("Forfeitures"). As in *Boyd*, though civil in form, the action here amounts to a quasi-criminal proceeding, "within the reason of criminal proceedings for all the purposes of the Fourth Amendment [to] the Constitution." *Boyd*, 116 U.S. at 634. This sentiment set forth in *Boyd* governs with equal force here—the civil form of this proceeding does not, in and of itself, mandate encroachment on Reents's private property rights without considering fourth amendment protection.

¶ 44    Nevertheless, relying upon our decision in *Kaull*, the Attorney General argues that the protections underlying the civil discovery rules satisfy any fourth amendment privacy concerns with respect to a discovery request in a civil case. The Attorney General's reliance upon *Kaull* is misplaced. *Kaull* involved a civil proceeding between private parties to identify beneficiaries of a trust. *Kaull*, 2014 IL App (2d) 130175, ¶ 1. The trial court granted the trustee's motion to compel the respondent to submit a DNA sample pursuant to Illinois Supreme Court Rule 215 (eff. Mar. 28, 2011), which sets forth the procedure and parameters for physical and mental examinations of parties and other persons. *Kaull*, 2014 IL App (2d) 130175, ¶ 19. The respondent challenged the constitutionality of Rule 215 on the grounds that the rule allows the court to order searches, seizures, and invasions of privacy without a showing of good cause or a satisfaction of any burden of proof. *Id.* ¶ 27. We held that the resolution of the constitutional challenge was unnecessary for the disposition of the case because, in a civil case between private parties, the discovery rules' requirements of relevance and reasonableness, together with the judicial oversight provided by the rules, more than satisfy any fourth amendment privacy concerns. *Id.* ¶¶ 44-45. We reasoned that "applying the fourth amendment to requests for discovery in civil cases between *private parties* undermines the core principles of modern discovery." (Emphasis added.) *Id.* ¶ 47. We also noted that pretrial discovery procedures are in general conducted in private and that protective orders afford *private litigants* the opportunity to prevent the public disclosure of private information

that might be " 'damaging to reputation and *privacy.*' " (Emphasis in original.) *Id.* ¶ 52 (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 35 (1984)).

¶ 45    Here, of course, this case is not between private parties. To the contrary, as discussed, the government is the plaintiff against Reents in this action under a statutory scheme that allows for significant civil penalties and, although not currently sought in this case, criminal penalties and forfeiture as well. See 415 ILCS 5/42 to 44.1 (West 2016). The government's Rule 214(a) discovery request seeks unrestricted access to property in which Reents maintains a privacy interest. In this regard, the discovery request amounts to a request for an actual search of private property, not merely a constructive search for information. The history of fourth amendment jurisprudence demonstrates that under these facts Reents must be able to avail herself of the protection provided by the fourth amendment.

¶ 46    The Attorney General also cites *City of North Chicago v. North Chicago News, Inc.*, 106 Ill. App. 3d 587 (1982), for the proposition that civil discovery procedures should not be subject to a fourth amendment analysis. There, the City of North Chicago sought to enjoin the defendant from selling materials in violation of the municipality's obscenity ordinance. *Id.* at 588. The court rejected the defendant's fourth amendment challenge to an order compelling the defendant's compliance with the municipality's request to produce the materials at issue, stating that the defendant presented no persuasive argument that civil discovery procedures should be subject to "the type of constitutional analysis utilized in unreasonable search and seizure criminal cases." *Id.* at 592-93. However, the court made no mention of the fact that the plaintiff was a municipality, and the parties do not appear to have raised the distinction. Indeed, in rejecting the application of the fourth amendment, the court relied upon *Monier v. Chamberlain*, 31 Ill. 2d 400 (1964)—a case involving private litigants only. *City of North Chicago*, 106 Ill. App. 3d at 593. Thus, *City of North Chicago* does not guide our analysis.

¶ 47    Instructive in this regard is *Union Oil Co. of California v. Hertel*, 89 Ill. App. 3d 383 (1980), in which the court, as in *Kaull*, rejected the application of fourth amendment principles to a discovery order in a civil case between private parties. There, a default judgment was entered against the defendant, based upon his refusal to comply with the trial court's order compelling him to provide a handwriting sample in accordance with the plaintiff's discovery request. *Id.* at 384-85. In discarding the defendant's argument that the discovery order violated his right to be free from unreasonable searches and seizures, the court reasoned that search-and-seizure law did not apply in an action between private parties. *Id.* at 386. Rather, "the provisions in the United States and Illinois constitutions prohibiting unreasonable searches and seizures were designed to protect the individual against oppressive action by the government and its officers." (Emphasis omitted.) *Id.* This cautionary language resonates here, where Reents invokes fourth amendment protection from the government's power to search her property.

¶ 48    The Attorney General also cites decisions from other jurisdictions to support the extension of *Kaull*'s holding to civil cases where the government is the party seeking disclosure. According to the Attorney General, "courts have repeatedly declined to impose different civil discovery requirements where a governmental entity is a party to a civil action." See, *e.g.*, *Hyster Co. v. United States*, 338 F.2d 183 (9th Cir. 1964); *United States v. Acquest Wehrle, LLC*, No. 09-CV-637C(F), 2010 WL 1708528 (W.D.N.Y. Apr. 27, 2010) (unpublished); *United States v. Bell*, 217 F.R.D. 335 (M.D. Pa. 2003); *Leybovich v. City of New York*, No. 89 CV 1877, 1992 WL 104828 (E.D.N.Y. Apr. 23, 1992) (unpublished); *United States v.*

*International Business Machines Corp.*, 83 F.R.D. 97 (S.D.N.Y. 1979); *Mentor v. Eichels*, No. 2014-L-097, 2015 WL 1289341 (Ohio Ct. App. Mar. 23, 2015).[5]

¶ 49 Initially, we note that decisions from other jurisdictions are not binding on this court. *Kostal v. Pinkus Dermatopathology Laboratory, P.C.*, 357 Ill. App. 3d 381, 395 (2005). This is particularly so here where several of the cases upon which the Attorney General relies are unpublished. See *Illinois State Toll Highway Authority v. Amoco Oil Co.*, 336 Ill. App. 3d 300, 317 (2003). Moreover, the Attorney General provides no analysis of any of these decisions beyond a mere parenthetical description. These deficiencies aside, a close review of the cases demonstrates that they do not offer a persuasive basis for the Attorney General's position in any event.

¶ 50 For instance, in *International Business Machines Corp.*, 83 F.R.D. at 98, an antitrust action, IBM challenged the government's subpoena for documents issued to IBM's board chairman pursuant to Federal Rule of Civil Procedure 45(d). IBM argued that the subpoena constituted an unreasonable search and seizure in violation of the fourth amendment. *Id.* at 99. In scrutinizing the argument, the district court distinguished investigative subpoenas (subpoenas *duces tecum* issued in the course of investigations by grand juries and administrative agencies like those in *Hale*, 201 U.S. 43, and *Oklahoma Press Publishing*, 327 U.S. 186, respectively) from the subpoena at issue before it—a subpoena *duces tecum* served by the government in the course of a civil proceeding. See *International Business Machines Corp.*, 83 F.R.D. at 101-02. The district court stated that investigative subpoenas are subject to the fourth amendment's prohibition against unreasonable constructive searches and seizures because investigative grand jury subpoenas seek to discover criminal activity and investigative administrative subpoenas seek to discover statutory violations. *Id.* In contrast, the district court reasoned, when the government "discards its investigative role for that of litigant," initiates a civil action, and issues a subpoena *duces tecum*, "it would appear the protection sought resides in the Federal Rules of Civil Procedure, not the fourth amendment." *Id.* at 102.

¶ 51 Nonetheless, in the same breath, the district court recognized that the fourth amendment objections could not be rejected merely because the case was a civil antitrust action without criminal or administrative sanctions, as the "Supreme Court has made clear that fourth amendment protection is not restricted to searches and seizures designed to uncover criminal wrongdoing." *Id.* at 103 (citing, *inter alia*, *Camara*, 387 U.S. 523, and *See*, 387 U.S. 541). The district court also recognized that the fourth amendment protects reasonable expectations of privacy from governmental intrusion, and it questioned why the protection would depend upon whether the government played the role of investigator or litigant. *Id.* at 102. Indeed, to hold that a subpoena served by the government in the course of a civil antitrust action cannot be challenged on fourth amendment grounds in the same manner as an investigative subpoena would lead to an "incongruous result: the timing of the government's document demand determines the applicability of the fourth amendment, even though precisely the same privacy interest is involved in each situation." *Id.* at 102-03.

¶ 52 Ultimately, the district court found itself "left in doubt" as to whether the "analogical 'search and seizure' embodied in a civil discovery subpoena" should be susceptible to a fourth

___

[5]The Attorney General also cites *Aderholt v. Bureau of Land Management*, No. 7:15-CV-00162-0, (N.D. Tex. 2016) (unpublished), but provides neither a publicly available source for this unpublished district court case nor provides a copy. We disregard this citation.

amendment challenge. *Id.* at 103. The district court, therefore, assumed *arguendo* the applicability of the fourth amendment's reasonableness requirement without resolving the issue. *Id.* The district court proceeded to conclude that the fourth amendment's reasonableness requirement was "no more rigorous than that imposed by [R]ule 45(b)" and analyzed the issue within the confines of a reasonableness challenge to a civil discovery request, ultimately denying IBM's challenge. *Id.* at 103-09.

¶ 53     The district court in *Bell* and the Ohio appellate court in *Mentor* similarly resolved fourth amendment challenges to civil discovery requests, albeit in abbreviated fashion. In *Bell*, the district court rejected a "right-of-privacy" objection to the government's request for the production of documents in a civil case the government brought against a tax protestor. However, the court reasoned that a court "may take concerned individuals' privacy interests into consideration in determining whether a discovery request is oppressive or unreasonable" under the civil discovery rules. *Bell*, 217 F.R.D. at 343. *Mentor* involved a civil lawsuit a municipality brought against individuals to have a residence declared a public nuisance. The court held that, even if the fourth amendment were a proper basis on which to challenge the municipality's inspection of the residence, the reasonableness requirement of the civil discovery rules satisfied the fourth amendment. *Mentor*, 2015 WL 1289341, at *4.

¶ 54     The history of fourth amendment jurisprudence demonstrates that the civil discovery rules do not satisfy the core protection of the fourth amendment here. Initially, we note that, unlike the government's subpoena *duces tecum* in *International Business Machines Corp.* and the government's request for the production of documents in *Bell*, the Attorney General's Rule 214(a) request to inspect the Site amounts to a request for an actual search of Reents's property, not just a constructive search for documents. Moreover, as the district court in *International Business Machines Corp.* recognized, the basic purpose of the fourth amendment—to safeguard individuals' privacy and security against arbitrary governmental intrusion—applies in the civil context, regardless of whether an individual is suspected of criminal conduct. *International Business Machines Corp.*, 83 F.R.D. at 102-03 (citing, *inter alia*, *Camara*, 387 U.S. 523, and *See*, 387 U.S. 541). Here, through the Rule 214(a) discovery request in this enforcement action seeking substantial civil penalties, the government seeks unrestricted access to the Site in which Reents maintains an undisputed privacy interest. Under these facts, we conclude that fourth amendment protection applies to Reents's privacy interest in her property.

¶ 55     The remaining foreign cases upon which the Attorney General relies provide no basis to hold otherwise. The Attorney General provides the following parenthetical explanation for the *Hyster* decision: " 'We do not find the ["civil investigative demand" under the Antitrust Civil Process Act (15 U.S.C. §§ 1311-14 (Supp. IV 1963))] unreasonable on its face, and [the plaintiff company] has made no attempt to show that it is unreasonable in its actual application to [it].' " In *Hyster*, the court of appeals rejected, *inter alia*, a fourth amendment challenge to the constitutionality of the Antitrust Civil Process Act, which provides a precomplaint procedure by which the Justice Department may demand information from an entity under investigation for a civil violation of antitrust laws. *Hyster*, 338 F.2d at 186. The Attorney General's parenthetical description of *Hyster* disregards the underlying premise that fourth amendment principles applied; the plaintiff company simply had not established that the government's demand for information was an unreasonable search and seizure. See *id.*

¶ 56 *Acquest Wehrle* and *Leybovich* are inapposite. The Attorney General cites *Acquest Wehrle* for the proposition that "no 'substantive Fourth Amendment issue' [is involved] in [a] discovery request to inspect land, even where 'potential criminal charges against Defendant and its principals [were] being considered.' " See *Acquest Wehrle*, 2010 WL 1708528, at *2. However, the district court's underlying rationale for rejecting the fourth amendment challenge included the application of the "open fields" doctrine, as there was "no indication the parcel has been fenced or posted, nor has Defendant pointed to the potential for any invasion of its legitimate privacy interests." *Id.*

¶ 57 Similarly inapplicable is *Leybovich*, an action under 42 U.S.C. § 1983 (1988) against the City of New York and several police officers, alleging that the officers illegally entered and searched the plaintiff's home. *Leybovich*, 1992 WL 104828, at *1. The defendants claimed that the officers entered and searched the home because they feared for the lives and safety of the occupants. *Id.* The defendants served a discovery request to enter the plaintiff's home to photograph and measure it. *Id.* The district court rejected as "absurd" the plaintiff's fourth amendment objection to the defendants' request. *Id.* However, there was no analysis of fourth amendment principles beyond the statement that the discovery order adequately protected against unreasonable intrusion by limiting the time and scope of the entry. *Id.*

¶ 58 In sum, the Attorney General provides no persuasive basis upon which to hold that the parameters of the civil discovery rules satisfy the fourth amendment here. The trial court ordered Reents to comply with the Attorney General's discovery request to inspect the Site pursuant to Rule 214(a). The Attorney General is the plaintiff in what amounts to a quasi-criminal environmental-enforcement action against Reents, seeking substantial civil penalties. In the discovery request, the Attorney General seeks unrestricted access to the Site, including "any buildings, trailers, or fixtures thereupon." This is a request for an actual search of the Site, not just a constructive search for information. Under these facts and in the face of Reents's undisputed privacy interest in her property, we are compelled to consider fourth amendment principles in resolving Reents's challenge to the discovery order. Our holding that fourth amendment principles apply here is expressly limited to the facts of this case. We express no opinion as to the broader issue of the applicability of the fourth amendment to a governmental discovery request in a civil case generally.

¶ 59 B. The Sufficiency of the Discovery Order

¶ 60 Having determined that fourth amendment principles apply to the discovery order here, the question remains whether the search of Reents's property is a reasonable search under the fourth amendment. As aptly stated in summarizing fourth amendment jurisprudence,

> "[w]hether the interests protected by the Fourth Amendment are characterized as privacy, property, security, or a combination of them, it is clear that under some circumstances, that interest may be invaded by the state upon an adequate showing and compliance with proper procedure. However interpreted, the Fourth Amendment is not an absolute bar to searches and seizures. Instead, the question often amounts to what showing must be made in any particular context to constitutionally justify a search." *State v. Ochoa*, 792 N.W.2d 260, 278 (Iowa 2010).

Here, the Attorney General made no showing beyond relevance to support the reasonableness of the search of the Site. We also note in this regard that the record demonstrates no evidentiary basis to support the search. The complaint (and the amended complaint) are unverified, and the

Rule 214(a) discovery request is not supported by affidavit. We address the showing that the Attorney General was required to make to justify the search of Reents's property.

¶ 61    As discussed *supra*, the fourth amendment's prohibition on unreasonable searches and seizures applies not only to private homes but also to commercial property. *Burger*, 482 U.S. at 699. "An owner or operator of a business thus has an expectation of privacy in commercial property, which society is prepared to consider to be reasonable." *Id.* The expectation of privacy in commercial property, however, "is different from, and indeed less than, a similar expectation in an individual's home." *Id.* at 700. The privacy expectation in commercial property being used in a "closely regulated" industry is "particularly attenuated." *Id.*; see *59th & State Street Corp. v. Emanuel*, 2016 IL App (1st) 153098, ¶ 18.

¶ 62    A closely regulated industry is one that is subject to such " 'close supervision and inspection' " that its owner "cannot help but be aware that his property will be subject to periodic inspections undertaken for specific purposes." *Donovan v. Dewey*, 452 U.S. 594, 600 (1981) (quoting *Colonnade Catering Corp. v. United States*, 397 U.S. 72, 76-77 (1970)). Recognized examples include running an automobile junkyard (*Burger*, 482 U.S. at 709), mining (*Donovan*, 452 U.S. at 602), firearms dealing (*United States v. Biswell*, 406 U.S. 311, 311-12 (1972)), and liquor sales (*Colonnade Catering Corp.*, 397 U.S. at 76-77; *59th & State Street Corp.*, 2016 IL App (1st) 153098, ¶ 19).

¶ 63    In light of the diminished expectation of privacy in commercial property being used in a closely regulated industry, "the warrant and probable-cause requirements, which fulfill the traditional Fourth Amendment standard of reasonableness for a government search [citation], have lessened application in this context." *Burger*, 482 U.S. at 702. Where, in the operation of a closely regulated industry, such as a landfill, "the privacy interests of the owner are weakened and the government interests in regulating particular businesses are concomitantly heightened, a warrantless inspection of commercial premises may well be reasonable within the meaning of the Fourth Amendment." *Id.*

¶ 64    Nonetheless, a warrantless administrative inspection of a closely regulated business is reasonable only if (1) there is a substantial government interest underlying the regulatory scheme pursuant to which the inspection is made, (2) the inspection is necessary to further the regulatory scheme, and (3) the regulatory scheme sets forth sufficient "certainty and regularity" to provide the business owner with a constitutionally adequate substitute for a warrant. (Internal quotation marks omitted.) *Id.* at 702-03. Thus, the regulatory scheme must advise the property owner that the property will be subject to periodic inspections undertaken for specific purposes and limit the discretion of the inspectors as to the time, place, and scope of the inspection. *Id.* at 703; *59th & State Street Corp.*, 2016 IL App (1st) 153098, ¶ 19.

¶ 65    Neither party disputes that the operation of landfills is a highly regulated industry. Indeed, the Act sets forth extensive, long-recognized regulatory oversight provisions for the operation of landfills. See 415 ILCS 5/20 *et seq.* (West 2016)); see also *Resource Investments, Inc. v. United States*, 85 Fed. Cl. 447, 457 (2009) ("municipal solid waste disposal is a highly regulated industry"); *Mid-American Waste Systems, Inc. v. City of Gary, Indiana*, 49 F.3d 286, 291 (7th Cir. 1995) ("Disposition of waste is a highly regulated industry. A claim that the Constitution protects this industry from public control—even when the landfill is public property—would bring nothing but belly laughs.").

¶ 66    What Reents disputed in the trial court was that the Site has been a landfill under her ownership. However, at the hearing on the motion to compel, Reents all but acknowledged the

status of the Site as a landfill in stating that she would not have purchased the property had she known about the judgment in the 2011 environmental-enforcement action. Accordingly, Reents suggests on appeal that the Attorney General should be required at a minimum to meet *Burger*'s three-part test for a warrantless inspection of a closely regulated business. We agree.

¶ 67 To be sure, Reents crafts her argument as a constitutional challenge to section 4(d)(1) of the Act, which authorizes the IEPA "[i]n accordance with constitutional limitations *** to enter at all reasonable times upon any private or public property for the purpose of *** [i]nspecting and investigating to ascertain possible violations of this Act." 415 ILCS 5/4(d)(1) (West 2016). She contends that section 4(d)(1) authorizes the IEPA to engage in warrantless administrative searches without satisfying the criteria set forth in *Burger*.

¶ 68 The record demonstrates that Reents did not raise this challenge to section 4(d)(1) of the Act in the trial court, the trial court did not rule on this issue, and Reents briefs the issue only in cursory fashion. The statute is not addressed at all by the Attorney General other than, as discussed *supra*, the Attorney General's representation that the State has abandoned reliance upon section 4(d)(1) as a basis to authorize the accompaniment of IEPA representatives at the inspection, in light of the administrative warrant the Attorney General ultimately obtained on the IEPA's behalf. Thus, the challenge to the constitutionality of section 4(d)(1) is forfeited as well as unnecessary to our resolution of Reents's appeal. See *People v. Waid*, 221 Ill. 2d 464, 473 (2006) (the court will not address a constitutional issue that is unnecessary for disposition of the case); *Nationwide Mutual Fire Insurance Co. v. T&N Master Builder & Renovators*, 2011 IL App (2d) 101143, ¶ 23 (issues raised for the first time on appeal are forfeited).

¶ 69 Moreover, Reents's challenge to section 4(d)(1) assumes too much. The point here is that the trial court properly held that the Site is a landfill, a closely regulated industry, but failed to consider *Burger*'s framework in crafting the discovery order. Indeed, the trial court did not consider fourth amendment principles at all in compelling Reents's compliance with what amounts to an unrestricted search of the Site and "any buildings, trailers, or fixtures thereupon." The discovery order lacks any limits on the time, place, and scope of the inspection such that it could provide an adequate substitute for a warrant, as contemplated by *Burger*. Fourth amendment principles mandate that the discovery order be limited to properly inform Reents of the government's exercise of its power to search her property.

¶ 70 Accordingly, we reverse the discovery order and remand for the trial court to apply *Burger*'s framework in ruling on the Attorney General's motion to compel. In light of our holding and the trial court's finding of Reents's "respectful intent to refuse to comply with this Court's order so that she might appeal the issue," we also vacate the contempt order and the monetary sanction. See *Kaull*, 2014 IL App (2d) 130175, ¶ 94.

¶ 71                                        III. CONCLUSION

¶ 72 For the foregoing reasons, we reverse the trial court's discovery order, vacate the trial court's contempt order, and remand the cause for further proceedings consistent with this opinion.

¶ 73 Reversed; vacated; cause remanded with directions.